NATHAN M. CHEREY, Appellant, *v.* CITY OF LONG BEACH
et al., Respondents.

Submitted March 11, 1940; decided April 9, 1940.

*Lester H. Washburn* and *Nathan M. Cherey*, in person, for appellant. The city of Long Beach has no power or authority to issue bonds to pay the judgments. (*Wells v. Town of Salina*, 119 N. Y. 280; *Ketchum v. City of Buffalo*, 14 N. Y. 356.) There is no general or special law which either determines or authorizes the city of Long Beach to determine the period of probable usefulness of the object or purpose for which the indebtedness evidenced by the bonds is to be contracted, for the purposes of section 2 of article 8 of the New York Constitution. (*Levy v. McClellan*, 196 N. Y. 178; *City of Poughkeepsie v. Quintard*, 136 N. Y. 275; *Veatch v. Moscow*, 18 Ida. 313; *Bolick v. City of Winston-Salem*, 202 N. C. 786; *Williams v. City of Rock Hill*, 177 S. C. 82.) Section 8-b of the General Municipal Law (Cons. Laws, ch. 24), in so far as it either determines or authorizes the City Council of the City of Long Beach to determine that the payment of judgments evidencing indebtedness incurred for other than capital purposes has any period of probable usefulness, is null and void. (N. Y. Const. art. 8, § 2). The issuance of the bonds will not constitute the refunding of indebtedness which has been contracted prior to January 1, 1939, and which may be refunded under section 2 of article 8 of the New York Constitution without regard to the period of probable usefulness of the object or purpose for which the indebtedness was contracted. (*Ketchum v. City of Buffalo*, 14 N. Y. 356; *People ex rel. Peene v. Carpenter*, 31 App. Div. 603.)

*Bernard H. Reich, Corporation Counsel* (*George Xanthaky* of counsel), for respondents. The payment of judgments is an expenditure of money for a proper public or municipal purpose. (*Levy v. McClellan*, 196 N. Y. 178; *Matter of Chapman v. New York*, 168 N. Y. 80; *Sun Printing Assn. v. New York*, 152 N. Y. 257; N. Y. Const. art. 8, § 2, ¶ 4.) The city has the authority and power to issue bonds and pay judgments. (*Ketchum v. City of Buffalo*, 14 N. Y. 356.) The object or purpose for which the bonds will be issued has a definite period of probable usefulness. (*Wooll-*

*cott* v. *Schubert*, 217 N. Y. 212; *McLean* v. *United States*, 226 U. S. 374; *People* v. *Tremaine*, 281 N. Y. 1; *Assn. for Protection of Adirondacks* v. *MacDonald*, 228 App. Div. 73; 253 N. Y. 234; *Hutchison* v. *Ross*, 262 N. Y. 381; *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210; *Union Free School District No. 3* v. *Town of Rye*, 280 N. Y. 469; *Matter of Coombs* v. *Edwards*, 280 N. Y. 361; *Franklin Society for Home Building & Savings* v. *Bennett*, 282 N. Y. 79.)

*William H. Emerson, Corporation Counsel (Robert R. Reed* of counsel) for City of Rochester, *amicus curiæ.* The " period of probable usefulness " of the " object or purpose " of indebtedness contracted to pay a judgment or other emergency debt, or to finance current expenses against revenue, is properly measured by the time reasonably required to liquidate the debt or to collect the taxes, levied or to be levied, for its payment. The funding of such debt is not prohibited by the Constitution. ( *Union Free School District No. 3* v. *Town of Rye*, 280 N. Y. 469; *Franklin Society* v. *Bennett*, 282 N. Y. 80; *Allen* v. *Stevens*, 161 N. Y. 122; *People* v. *Mancuso*, 255 N. Y. 463; *Tillinghast* v. *Tillinghast*, 25 Fed. Rep. [2d] 531; *Richmond* v. *Henrico Co.*, 83 Va. 204; *Chadwick* v. *Crawfordsville*, 24 N. E. Rep. [2d] 942.)

*E. J. Dimock* and *Richard S. Kyle* for Hawkins, Delafield and Longfellow, *amici curiæ.*

Lehman, Ch. J. The Common Council of the city of Long Beach has adopted an ordinance which provides that bonds of the city in the aggregate principal amount of $373,000 shall be issued for the purpose of funding certain unpaid judgments enumerated in the ordinance. These bonds are to be designated as " Judgment Funding Bonds." They are to be dated January 1, 1940. " They shall," in accordance with the terms of the ordinance, " bear interest at a rate not exceeding four per centum (4%) per annum, payable semi-annually on each January 1st and July 1st, and shall mature $264,000 of Bonds on January 1, 1941, and $109,000 of Bonds on January 1, 1942."

The plaintiff, a taxpayer of the city of Long Beach, has challenged the power of the city of Long Beach to issue the bonds. He asserts that the Legislature has not conferred power upon the city of Long Beach to issue bonds for the purpose of funding or paying judgments and that the Constitution of the State of New York (Art. VIII, § 2) prohibits any issue of bonds for such purpose. The controversy was submitted to the Appellate Division upon an agreed statement of facts. It decided that the city had power to adopt the ordinance and to issue the bonds in accordance with its terms. Thereafter the Legislature amended the charter of the city of Long Beach (Laws of 1922, ch. 635) so as to confer upon the city express power to borrow money and to issue bonds for the " payment or funding of any judgment heretofore or hereafter recovered against the city." (Laws of 1940, ch. 92.) The parties have, upon this appeal, stipulated that the new statute leaves open only the question whether the proposed bond issue will contravene the provisions of the Constitution of the State.

Article VIII of the Constitution, entitled " Local Finances," regulates the manner in which local subdivisions of the State may contract indebtedness, pledge their credit, and issue bonds or other obligations. Section 2 of that article is entitled " Restrictions on indebtedness of local subdivisions; contracting and payment of local indebtedness; exceptions." It provides, among other things: " No indebtedness shall be contracted for longer than the period of probable usefulness of the object or purpose for which such indebtedness is to be contracted, to be determined by or pursuant to general or special laws, which determination shall be conclusive, and in no event for longer than forty years." The parties, in order to define the controversy submitted to the court, have stipulated that " plaintiff asserts that in issuing said bonds said City will contract indebtedness for longer than the period of probable usefulness of the object or purpose for which such indebtedness is to be contracted, in contravention of Section 2 of Article

VIII of the Constitution of the State of New York, since the object or purpose for which said bonds are to be issued has no period of probable usefulness."

Experience has demonstrated that in public, as in private, business current expenses should ordinarily be paid from current income; and that when indebtedness is contracted to meet extraordinary expenditures or expenditures not expected to recur, the indebtedness should be paid within the period in which the benefit expected to result from such expenditures is enjoyed. Where public officers charged with the duty to maintain government and to provide the money required to meet its expense have unrestricted power to borrow money, there is danger that such power may be used to postpone payment of current expenses and to place upon later generations the burden of paying for benefits long after the benefits have ceased. Extravagance, waste and, eventually, impairment or destruction of the public credit may result.

The Constitutional Convention of 1938 heeded such danger and formulated amendments to the Constitution calculated to afford adequate protection. In the Constitution as it existed at that time, there was provision that, with certain exceptions not material here, no debt should be contracted by or in behalf of the State " for a period longer than that of the probable life of the work or object for which the debt is to be contracted, to be determined by general laws, which determination shall be conclusive." (Art. VII, § 4.) With but one change, the Constitutional Convention of 1938 incorporated in section 12 of article VII of the proposed amended Constitution, a similar restriction upon the power of the State to contract debts; in the amended Constitution the reference is to the " probable life of the work or *purpose*," instead of the " probable life of the work or *object*," for which the debt is contracted. At the same time, the Constitutional Convention incorporated in section 2 of article VIII of the proposed amended Constitution the provision, applying to debts of local subdivisions, which is relied upon by the plaintiff herein. There, it must be noted, the

reference is to the " period of probable usefulness of the object or purpose " of the debt instead of the " probable life of the work or object."

The difference in language is significant and its purpose has been made patent in the proceedings of the Constitutional Convention. Argument might be made that the words " probable life of the work or object," originally used in the restriction imposed by the Constitution upon the debt-contracting power of the State, can be applied reasonably only where a debt is contracted for a physical capital improvement and that no debt contracted for any other purpose may be made payable at a later date. Indeed, when the Legislature, in obedience to the mandate of the original provision of the Constitution, passed a general law determining the " probable life of certain works or objects of state debt," it made no determination of the probable life of any " work or object " other than physical capital improvements. (Cf. § 51 [now § 49-b] of the State Finance Law [Cons. Laws, ch. 56] [Laws of 1924, ch. 23].) In 1932, however, the Legislature enacted a new section, 49-c, of the State Finance Law, " in further compliance with the requirements of section four of article seven of the state constitution," and provided therein that " the probable life of a public activity for relieving the people of the state from hardship and suffering caused by unemployment is hereby measured by the probable duration of its public welfare effect and is hereby determined to be twenty years." (Laws of 1932, ch. 564.) We need not pause here to consider whether the original failure to determine the probable life of any " work or object " not connected with a physical improvement, constituted a legislative construction that only works or objects which involve such an improvement have a " probable life " which can be determined by the Legislature, or whether the belated legislative determination that the " probable life " of a relief activity is twenty years, transcended the scope of the discretionary power vested under the Constitution in the Legislature. That belated determination was never challenged but when the Committee

on State Finances submitted to the Constitutional Convention of 1938 the draft of its proposed amendments to the Constitution, it said in its report that, " At present a debt can be contracted only for ' some single work or object.' As these terms appear to be synonymous and to relate to something physical, it is deemed wiser to substitute the word ' purpose ' for the word ' object ' and remove any doubt that may exist as to the power of the State to contract a debt for some single objective that may relate to more than one physical structure or, indeed, as in the case of relief bonds, may not include a physical structure.   This change is in accordance with the actual construction which has been placed upon the existing language."   (Report of Committee on State Finances, Constitutional Convention, Document 3, pp. 6 and 7.)   In the light of that report there can be no doubt that when the Convention adopted section 12 of article VII of the amended Constitution, it intended that the words " probable life of the work or purpose " for which the State might contract a debt payable at a later stipulated date should include debts contracted for relief and other proper purposes, which do not involve the construction or acquisition of a physical structure.

The words " period of probable usefulness of the object or purpose," for which a debt is contracted, are of course of broader scope.   Here, there is no possible implication that only the construction or acquisition of physical improvements can constitute an " object or purpose " which has a " period of probable usefulness " and that the Constitution permits a local subdivision to incur indebtedness payable thereafter in installments only in order to construct or acquire such physical improvements.   Though it is entirely clear that *some* other " objects and purposes " for which indebtedness may be contracted may have " a period of probable usefulness " in the future and that when such period of usefulness has been determined the indebtedness may be made payable in installments during such period, it is nevertheless equally clear that not *every* object or purpose for which a debt is contracted does have such a period of

extended usefulness. There must be some basis for a determination that the object or purpose for which the indebtedness is contracted will probably be useful in the future as well as in the immediate present. What we have said still leaves open, therefore, the question whether the plaintiff may properly challenge the determination that indebtedness contracted by a municipal corporation to pay outstanding judgments is incurred for a purpose which has a period of probable future usefulness.

A judgment for a sum of money constitutes an indebtedness but it is not an indebtedness "contracted" by the judgment debtor within the meaning of the constitutional restriction. That provision applies only to indebtedness voluntarily assumed and payable at a stipulated time in the future in accordance with stipulated terms. A judgment is usually imposed *in invitum*, though it may be for the enforcement of an indebtedness previously contracted; it is immediately payable and enforcible by execution against the property of a judgment debtor who has property which is not exempt from execution, and a municipal corporation may ordinarily be compelled to levy taxes to pay a judgment or other indebtedness which is immediately payable. Enforcement of a judgment out of the property of a judgment debtor will, at times, cause the debtor irreparable damage; and compulsory payment of large judgments against a municipal corporation out of moneys raised by a single tax levy may cause oppressive hardship to the taxpayers. The hardship may be the result of neglect of the officers of the corporation; none the less a court of equity will, at times, relieve the hardship by permitting the municipal corporation to spread over a series of years the assessment and levy of taxes to pay a judgment. So this court decided in connection with the judgments against the city of Long Beach which the city seeks now to pay out of the proposed bond issue. (*County of Nassau* v. *City of Long Beach*, 272 N. Y. 260; *Matter of Coombs* v. *Edwards*, 280 N. Y. 361. Cf. *East St. Louis* v. *Amy*, 120 U. S. 600.) Can it be said that an indebtedness incurred to pay judgments does not

serve a purpose which is useful, at least for the period during which taxes might otherwise be levied to pay the judgments, or that the purpose of the constitutional restriction would be thwarted if indebtedness so contracted is made payable in installments during the same period?

Judgments, as we have said, may be granted for the enforcement of an indebtedness previously contracted and such indebtedness may have been contracted for objects or purposes which have only transient usefulness of which no trace remains when the judgment is rendered. The Constitution prohibits a municipal corporation from contracting indebtedness payable in the future for objects or purposes of purely transient usefulness and argument is made that an indebtedness contracted to pay a judgment is in effect an indebtedness contracted to pay the obligation which underlies the judgment and may not be made payable at a date when the original obligation is of no continuing use. We are told that unless the restriction placed by the Constitution upon the debt-contracting power of the local division is so construed, officers of a municipal corporation might defeat the plain purpose of the restriction by the simple expedient of postponing payment of indebtedness until a judgment is obtained by the creditor and then issuing bonds to pay the judgment and in that manner imposing upon taxpayers in the future the burden of paying past expenses of government which no longer serve a useful purpose.

No safeguards imposed by Constitution or statute can give to the public perfect protection against misuse by public officers of powers conferred upon them. For such wrong, the only remedy often lies in the ballot. Here, the Constitution provides the rule to be applied and it has not left to the public officers plenary discretion in the application of the rule. The determination of the period of probable usefulness of the objects or purposes for which indebtedness is incurred is not left to the local subdivisions. That determination must be made " by or pursuant to general or special laws, which determination shall be conclusive."

In obedience to that mandate, the Legislature has enacted section 8-b of the General Municipal Law (Cons. Laws, ch. 24), entitled "Periods of Probable Usefulness" (Laws of 1939, ch. 235, as amd. by Laws of 1939, ch. 381). That section provides that, "In compliance with the requirements of section two of article eight of the state constitution the period of probable usefulness of the several objects and purposes described below for which indebtedness may be contracted by any county, city, town, village, fire district, or other organized district, except a school district, empowered by law to contract indebtedness, is hereby determined to be as follows, notwithstanding the provisions of any general, special or local law:    *    *    *

"22. Judgments. Payment of judgments against the municipality, other than for capital purposes, five years. *    *    *."

The statute constitutes a legislative construction that the provisions of section 2 of article VIII permit a local subdivision to contract an indebtedness payable at a later date for the purpose of funding judgments, where such funding would serve a continuing useful purpose. We may not lightly cast aside such a legislative construction made within a few months after the Constitutional Convention in which members of the Legislature had an influential part and, here, reason would, indeed, constrain us to construe the Constitution in the same manner. Where a levy of taxes sufficient to pay outstanding judgments would cause such undue hardship to the taxpayers that equity will permit the tax levy to be spread over a series of years, an indebtedness incurred to fund the judgment must necessarily serve a useful purpose during the period over which the tax levy might be spread, regardless of the nature or object of the original obligations enforced by the judgments. The Constitution does not prohibit the issue of bonds to accomplish a public purpose where the bonds are payable within the period, as determined by the Legislature, in which the object for which the bonds are issued serves a useful purpose. The Legislature, which determines the period of probable

usefulness of the purposes and objects for which bonds might be issued, may, in reaching its determination, weigh possible usefulness in some cases against possible harm to the public interest in others. It might refuse to find that indebtedness contracted for payment of judgments other than for capital purposes is contracted for an object or purpose which has any period of public usefulness which can properly be determined by general law. Then, under the Constitution, no bonds could be issued for such purpose. The Legislature has, however, determined that the indebtedness has a period of probable usefulness of five years and that determination is conclusive. We may not consider whether it is wise or not. Upon this appeal we pass only upon the controversy which has been submitted to the court. We do not pass upon the validity of the bonds in any other respect.

The judgment should be affirmed, without costs.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Judgment affirmed.