PAULINE SALZMAN, Appellant, *v.* VINCENT R. IMPELLITTERI, as Mayor of the City of New York, et al., Appellants, et al., Defendants, and NATHANIEL L. GOLDSTEIN, as Attorney-General of the State of New York, Intervener, Respondent.

Argued May 29, 1953; decided June 5, 1953.

*Herman Katz, Louis A. Cioffi* and *Edward S. Blackstone* for Pauline Salzman, appellant. I. The New York City Transit Authority Act (L. 1953, ch. 200, as amd. by ch. 201) is a local act and not a " general " law. (*Greene* v. *Dunscomb,* 281 N. Y. 261; *Adler* v. *Deegan,* 251 N. Y. 467; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. 785, 206 App. Div. 688, 236 N. Y. 593.) II. The act is an unconstitutional interference with the

* Designated pursuant to section 5 of article VI of the State Constitution in place of Van Voorhis, J., disqualified.

*property,* affairs or government of the City of New York, without the city's antecedent prescribed consent. (*New Rochelle Trust Co.* v. *White,* 258 App. Div. 400; *Matter of Rapid Tr. R. R. Comrs. of City of N. Y.,* 197 N. Y. 81; *Matter of City of New York* [*Gillen Place*], 195 Misc. 685; *Matter of McAneny* v. *Board of Estimate of City of N. Y.,* 232 N. Y. 377; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *Union Real Estate Co.* v. *City of New York,* 183 App. Div. 417; *Litchfield Constr. Co.* v. *City of New York,* 244 N. Y. 251; *Matter of Continental Guar. Corp.* v. *Craig,* 240 N. Y. 354; *City of New York* v. *New York Tel. Co.,* 278 N. Y. 9.) III. The " Authority " act unconstitutionally pledges the credit of the City of New York. (*Albany Port Dist. Comm.* v. *National Commercial Bank & Trust Co.,* 259 App. Div. 1115, 283 N. Y. 768; *Reiss Constr. Co.* v. *City of New York,* 183 Misc. 617; *Matter of Emerson* v. *Buck,* 230 N. Y. 380; *Wilmerding* v. *O'Dwyer,* 272 App. Div. 35.) IV. The appointment formula prescribed by the act and the absence of any removal formula renders the act (chs. 201, 202) unconstitutional. (*Barrett* v. *Boehm,* 256 App. Div. 13; *People ex rel. Bush* v. *Houghton,* 182 N. Y. 301.) V. Whether the acceptance of the Transit Authority is mandatory or optional, constitutional conditions precedent cannot be waived by contract. VI. All references in chapters 202 through 208 of the Laws of 1953 to the Authority set up in chapters 200 and 201 of the Laws of 1953 should be stricken as unconstitutional legislative " duress " and coercion and, therefore, inoperative. (*Denihan Enterprises* v. *O'Dwyer,* 302 N. Y. 457.)

*Denis M. Hurley, Corporation Counsel* (*W. Bernard Richland, Pauline K. Berger* and *Barbara Carroll* of counsel), for Vincent R. Impellitteri and another, appellants. I. The New York City Transit Authority Act and the tax laws which are intertwined with it were enacted without compliance with home rule requirements. (*Matter of Corrigan* v. *Joseph,* 304 N. Y. 172; *Matter of Kuhn* v. *Curran,* 294 N. Y. 207; *Matter of Carey* v. *Morton,* 297 N. Y. 361; *Sun Print. & Pub. Assn.* v. *Mayor of City of N. Y.,* 152 N. Y. 257; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Matter of McAneny* v. *Board of Estimate of City of N. Y.,* 232 N. Y. 377; *Bronx Gas & Elec. Co.* v. *Maltbie,* 268 N. Y. 278; *Matter of Mayor of City of N. Y.* [*Elm St.*], 246

N. Y. 72; *Matter of Holland* v. *Bankson,* 290 N. Y. 267; *New Rochelle Trust Co.* v. *White,* 283 N. Y. 223.) II. The transfer of the power to determine the necessity for, the routes of, and whether and to what extent the construction and extension of transit facilities should be undertaken at municipal expense, and the power to operate the transit system to a Transit Authority, the members of which are not appointed by city officers or authorities, violates the letter and spirit of section 8 of article IX of the State Constitution. (*People ex rel. Metropolitan St. Ry. Co.* v. *State Bd. of Tax Comrs.,* 174 N. Y. 417; *People ex rel. Town of Pelham* v. *Village of Pelham,* 215 N. Y. 374; *Matter of Brown-Lipe Gear Co.* v. *Ferris,* 275 N. Y. 418; *Matter of Wendell* v. *Lavin,* 246 N. Y. 115; *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *Rathbone* v. *Wirth,* 150 N. Y. 459; *People ex rel. Bush* v. *Houghton,* 182 N. Y. 301; *Devoy* v. *Mayor of N. Y.,* 36 N. Y. 449; *People ex rel. Balcom* v. *Mosher,* 163 N. Y. 32; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532.) III. The Transit Authority laws violate sections 1 and 3 of article VIII and section 5 of article X of the State Constitution. (*Board of Supervisors of Cayuga Co.* v. *State of New York,* 153 N. Y. 279; *People ex rel. Balcom* v. *Mosher,* 163 N. Y. 32; *Village of Kenmore* v. *County of Erie,* 252 N. Y. 437; *Litchfield Constr. Co.* v. *City of New York,* 244 N. Y. 251; *Matter of Rapid Tr. R. R. Comrs. of City of N. Y.,* 197 N. Y. 81; *Williamsburgh Sav. Bank* v. *State of New York,* 243 N. Y. 231; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *Gaynor* v. *Marohn,* 268 N. Y. 417; *Western N. Y. Water Co.* v. *Erie Co. Water Authority,* 279 App. Div. 1132, 304 N. Y. 743; *Union Free School Dist. No. 3* v. *Town of Rye,* 280 N. Y. 469.) IV. The act provides that the agreement must contain a provision committing the city to incur a total exceeding $574,000,000. In addition, there would be imposed upon the city an amount of indebtedness unascertainable in extent until the end of the term. Such full amount will cause the city's constitutional debt incurring limit to be greatly exceeded immediately upon the signing of the agreement in direct violation of section 4 and subdivision E of section 7 of article VIII of the State Constitution. (*Levy* v. *McClellan,* 196 N. Y. 178; *Smith* v. *Town of Quin,* 155 So. 865 [Ala.]; *Beard* v. *City of Hopkinsville,* 24 S. W. 872 [Ky.]; *Benjamin* v. *City of Mayfield,* 186 S. W. 169 [Ky.]; *Keller* v.

*City of Scranton,* 49 A. 781 [Pa.]; *Lesser* v. *Warren Borough,* 85 A. 839 [Pa.]; *Duane* v. *City of Philadelphia,* 185 A. 401 [Pa.]; *Smull* v. *Delaney,* 175 Misc. 795.) V. It is the manifest purpose of chapters 200 through 205 of the Laws of 1953 to empower the Transit Authority to control the taxing power to achieve an objective utterly unrelated to the taxing power. The power to tax can be granted or withheld only by the Legislature or by the elected officials of a municipality to which the Legislature grants the power. It cannot be placed within the discretion of appointed officers of the State to grant or withhold the taxing power. Such condition being invalid, the city has full power to exercise the taxing powers granted in chapter 199 of the Laws of 1953, and in such other laws. (*Asbury* v. *Town of Albermarle,* 78 S. E. 146 [N. C.]; *Gautier* v. *Ditmar,* 204 N. Y. 20; *Matter of Board of Educ., Town of Brookhaven* v. *Graves,* 214 App. Div. 40; *Wilson* v. *School Dist. of Phila.,* 195 A. 90 [Pa.]; *Township of Bernards* v. *Allen,* 39 A. 716 [N. J.]; *Stewart* v. *City of Cheyenne,* 154 P. 2d 355 [Wyo.].) VI. The conditioning of the city's power to raise taxes on real estate upon the requirement that it transfer its transit system to the Transit Authority violates section 9 of article IX of the State Consitution and deprives the city of its property without due process of law in violation of section 6 of article I. (*United States* v. *New Orleans,* 98 U. S 381; *Helena Con. Water Co.* v. *Stelle,* 49 P. 382 [Mont.]; *Osborn* v. *Robbins,* 36 N. Y. 365; *Reiter* v. *Illinois Nat. Cas. Co.,* 65 N. E. 2d 830 [Ill.]; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *Germania Sav. Bank* v. *Village of Suspension Bridge,* 159 N. Y. 362; *County of Nassau* v. *City of Long Beach,* 272 N. Y. 260; *Webb* v. *Mayor of City of N. Y.,* 64 How. Prac. 10; *Benson* v. *Mayor of City of N. Y.,* 10 Barb. 223; *Litchfield Constr. Co.* v. *City of New York,* 244 N. Y. 251.) VII. Chapters 206 and 207 of the Laws of 1953 relate to the property, affairs and government of the city but, in violation of section 11 of article IX, were not passed upon a home rule request or a two-thirds vote. Such acts further violate section 8 of article IX by transferring from municipal officials to the State Comptroller the power to determine the circumstances under which temporary indebtedness may be incurred for an unforeseeable public emergency. (*Wilmerding* v. *O'Dwyer,* 272 App. Div. 35, 297 N. Y. 664; *McGrath* v. *Grout,*

171 N. Y. 7; *Levy* v. *McClellan,* 196 N. Y. 178; *Gubner* v. *McClellan,* 130 App. Div. 716; *Hills* v. *Peekskill Sav. Bank,* 101 N. Y. 490; *Matter of Evans* v. *Berry,* 262 N. Y. 61; *Matter of Mayor of City of N. Y.* [*Elm St.*], 246 N. Y. 72; *Matter of Osborn* v. *Cohen,* 272 N. Y. 55; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532; *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50.)

*Nathaniel L. Goldstein, Attorney-General,* in person (*Wendell P. Brown* and *Ruth Kessler Toch* of counsel), for intervener-respondent. I. The motions of the Attorney-General addressed to the pleadings should have been granted. (*Niagara Falls Power Co.* v. *White,* 292 N. Y. 472; *Bull* v. *Stichman,* 273 App. Div. 311, 298 N. Y. 516; *Incorporated Vil. of Island Park* v. *Island Park-Long Beach, Inc.,* 274 App. Div. 930; *County of Albany* v. *Hooker,* 204 N. Y. 1; *Pauchogue Land Corp.* v. *Long Island State Park Comm.,* 243 N. Y. 15; *Breen* v. *Mortgage Comm. of State of N. Y.,* 285 N. Y. 425; *Town of Ohio* v. *People,* 264 App. Div. 220; *Federation of Labor* v. *McAdory,* 325 U. S. 450; *People* v. *Morris,* 13 Wend. 325; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Matter of Cash* v. *Bates,* 301 N. Y. 258; *Matter of Moss,* 277 App. Div. 289.) II. It will be only by a voluntary act upon the part of the city if the Transit Authority statute becomes effective and an agreement is made thereunder. The act imposes or compels nothing. (*New York Steam Corp.* v. *City of New York,* 268 N. Y. 137; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377; *People ex rel. New York Elec. Lines Co.* v. *Squire,* 107 N. Y. 593; *Matter of New York Elevated R. R. Co.,* 70 N. Y. 327; *Matter of Church,* 92 N. Y. 1; *People* v. *Dunn,* 157 N. Y. 528.) III. The laws creating the Transit Authority· and the fiscal laws are all in the field of State concern wherein the State Legislature has plenary power. (*Oswego & Syracuse R. R. Co.* v. *State of New York,* 226 N. Y. 351; *Adler* v. *Deegan,* 251 N. Y. 467; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *Kelly-Sullivan, Inc.,* v. *Moss,* 174 Misc. 1098, 260 App. Div. 921; *Matter of La Guardia* v. *Smith,* 288 N. Y. 1; *Matter of Ricker* v. *Village of Hempstead,* 290 N. Y. 1; *People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *Matter of McAneny* v. *Board of Estimate of City of N. Y.,* 232 N. Y. 377; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110.) IV. The method

of appointment of members of the Transit Authority provided in the act is valid under the State Constitution. (*People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *People ex rel. Metropolitan St. Ry. Co.* v. *State Bd. of Tax Comrs.,* 174 N. Y. 417; *Matter of Morgan* v. *Furey,* 186 N. Y. 202; *Hequembourg* v. *City of Dunkirk,* 49 Hun 550; *State Bd. of Pharmacy* v. *Bellinger,* 138 App. Div. 12; *Matter of Stoughton* v. *Cohen,* 281 N. Y. 343; *Matter of Wendell* v. *Lavin,* 246 N. Y. 115; *Ely* v. *Holton,* 15 N. Y. 595; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. 785, 206 App. Div. 688, 236 N. Y. 593.) V. The provision of the transit law requiring the city to continue to pay the capital costs on the transit lines does not violate article VIII or section 5 of article X of the Constitution. It does not require the city to give or loan its credit (art. VIII, § 1) nor to levy taxes or assessments upon real estate (art. VIII, § 3). No provision of the law involves the city's debt limit. (*Union Free School Dist. No. 3* v. *Town of Rye,* 280 N. Y. 469; *People ex rel. Board of Comrs. of Washington Park* v. *Banks,* 67 N. Y. 568; *Bogart* v. *County of Westchester,* 270 App. Div. 274, 296 N. Y. 701; *Sun Print. & Pub. Assn.* v. *Mayor of City of N. Y.,* 152 N. Y. 257; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. 785, 206 App. Div. 688, 236 N. Y. 593; *Matter of Tobin* v. *La Guardia,* 290 N. Y. 119; *Brooklyn Public Lib.* v. *City of New York,* 250 N. Y. 495; *County of Oneida* v. *City of Utica,* 260 App. Div. 363, 285 N. Y. 788; *Adler* v. *Deegan,* 251 N. Y. 467.) VI. There is no delegation of taxing power. (*Matter of Evans* v. *Berry,* 262 N. Y. 61.) VII. Section 20 of article III can have no bearing whatsoever; the transit law does not appropriate State moneys or property. (*Board of Supervisors of Co. of Seneca* v. *Allen,* 99 N. Y. 532; *People ex rel. Eisman* v. *Ronner,* 185 N. Y. 285; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Gaynor* v. *Village of Port Chester,* 230 N. Y. 210; *Buchanan* v. *Town of Salina,* 270 App. Div. 207.) VIII. Section 17 of article III cannot possibly be violated; the transit law requires the city's consent, by the agreement with it, to turn the lines over for operation. IX. As a municipality the city, as against the State, cannot sustain a charge of a deprivation of property without due process of law. (*Robertson* v. *Zimmermann,* 268 N. Y. 52.)

*Per Curiam.* This is a taxpayer's action to enjoin the City of New York from entering into any kind of agreement with the New York City Transit Authority pursuant to chapters 200-208 of the Laws of 1953, and for a declaratory judgment determining that no transaction which those statutes purport to authorize can be executed due to their alleged unconstitutionality. The action was begun before any lease or other form of agreement had been made between the city and the Transit Authority respecting the subways; indeed, before the members of the Authority had been appointed.

The statutes in question are permissive only, in a field in which the State is concerned. Under these circumstances, and assuming that any transfer will not be by absolute conveyance, but by a lease of limited term with reversion to the city, we cannot say that the legislation is on its face unconstitutional. Whether it would be constitutional without those concomitants need not now be decided. Arguments addressed to policy are not within our province. Whether the statutes will be constitutionally applied, or whether other constitutional questions, not now foreseeable, will arise, we cannot know in advance. Such problems, if any, must be dealt with when presented.

The judgment should be modified in accordance with this opinion and, as so modified, affirmed, without costs.

DYE, J. (dissenting). I agree that a justiciable controversy exists, which has not been rendered moot, by the execution of the lease between the city and the Transit Authority and that we may, accordingly, deal with the problem on its merits. A majority of this court is about to decide that the Transit Authority legislation (L. 1953, chs. 200-208) " on its face " does not appear to be " unconstitutional." With this I cannot agree.

The People, as every one knows, have vested the legislative power in the Senate and Assembly (N. Y. Const., art. III, § 1). Nonetheless under the home rule provisions the Legislature is prohibited from enacting any laws in relation to the " property, affairs or government " of any city except when requested by the city affected and then only upon " the concurrent action of two-thirds of the members of each house of the legislature " (N. Y. Const., art. IX, § 11).

Here, concededly, there was no compliance with this salutory condition precedent. The laws were passed without any request by the city and without a two-thirds vote of both houses of the Legislature. This fatal omission may not be excused for the Constitution in so many words requires it — nor may it be justified on any theory of an overriding State concern.

The statutes now under consideration, on their face, have reference only to New York City and, dealing as they do with the city-owned transit system, must meet the test of the Constitution if validity is to be accorded. Never before has the State intervened to require a city to turn over to an appointed authority the control, operation and management of a vast proprietary interest such as is involved here. Regulation of utilities, including transportation within the province of the Public Service Commission or the Rapid Transit Commission, is something quite different from the complete assumption and control authorized by the Transit Authority laws.

It is no answer to our problem to say that the Transit Authority Act authorizes but does not compel the city to turn over its transit facilities by "deed, lease, license or other arrangement, provided the term thereof shall not be less than ten years" (L. 1953, chs. 200–201). To be sure the language used connotes permission, but the permission is so intertwined with the fiscal aspects of the tax laws enacted as a part thereof (chs. 202–208) as to make any choice wholly illusory. It may not be denied that if the city is to have the benefit of the tax laws, it must divest itself of the control of its transit system or, to state it simply, the city must either choose to comply with the Transit Authority provisions or else forfeit the additional taxes — a choice of a sort but nonetheless, for all practical purposes, without an alternative. Even though the laws be treated as permissive, we cannot escape the conclusion that they nonetheless deal solely with the "property, affairs or government" of the City of New York.

The existing home rule provisions of the Constitution adopted by the People, after many years of struggle for local self-government are, as we have heretofore stated, intended to vest in the cities of the State increased control of their own "property, affairs and government" (*Matter of Holland* v.

*Bankson,* 290 N. Y. 267, 270) and " to extend the field in which a city might legislate and to exclude the Legislature from that field " (*New Rochelle Trust Co.* v. *White,* 283 N. Y. 223, 230). On the threshold of its being, the Transit Authority legislation was not given the benefit of legislative compliance with the antecedent requirements of the home rule provisions without which its validity may not be approved. Because we deem such lack to be fatal, other aspects contravening the State Constitution need not now be discussed.

The presumption attending the constitutionality of legislative enactments is not being overlooked. By the same token, we may not disregard the threat to constitutional government that lurks in a piecemeal whittling away of constitutional mandates. To accord these statutes validity because the act does not appear to be " on its face unconstitutional " is to create a pattern for future guidance the effect of which will eventually, if it has not already done so, vitiate constitutional home rule. The power to withhold or to grant the right to tax on condition may indeed become a formidable weapon of unlimited possibilities.

The judgment appealed from should be reversed and a judgment entered granting the relief demanded in the complaint.

LEWIS, Ch. J., CONWAY, DESMOND, FULD, FROESSEL and VAN VOORHIS, JJ., concur in *Per Curiam* opinion; DYE, J., dissents in opinion.

Judgment accordingly.