CHARLES BUGEJA, Appellant, *v.* CITY OF NEW YORK et al., Respondents.

Second Department, December 9, 1965.

*Rubinton, Coleman & Ostrow (Theodore D. Ostrow* and *Nathan Cooper* of counsel), for appellant.

*Leo A. Larkin, Corporation Counsel (Pauline K. Berger* of counsel), for respondents.

HOPKINS, J.   Chapter 440 of Laws of 1965 empowers the Mayor of the City of New York to authorize the issuance of serial bonds in the maximum principal amount of $255,800,000 in order to provide for the city's payment of its pension or retirement liabilities during fiscal year 1965.   Chapter 440 declares that

'' The maximum period of probable usefulness of the objects or purposes of such bonds shall be five years.'' Appellant argues that (1) chapter 440 is unconstitutional because enacted without a home rule request (N. Y. Const., art. IX, § 2); and (2) a factual issue exists in support of his claim that the bond sale will cause the respondent city to exceed its constitutional debt limitation (N. Y. Const., art. VIII, § 4, subd. [c]).

About plaintiff's second contention this court is of one mind. We find that he failed at Special Term to submit proof of any evidentiary fact which tended to contravene the prima facie validity of the net debt' margin figure contained in the City Comptroller's verified debt statement submitted by respondents (Local Finance Law, § 109.00; CPLR 4520).

However, we divide on the central issue whether chapter 440 in itself represents a constitutional exercise of legislative power.

We hold that chapter 440 is constitutional with respect to its object and its means.

With respect to its object, we hold that payment by New York City of its mandatory pension or retirement liabilities is a matter of State concern exempting chapter 440 from the home rule article of the Constitution (N. Y. Const., art. IX, § 2; cf. *Adler* v. *Deegan,* 251 N. Y. 467; *Robertson* v. *Zimmerman,* 268 N. Y. 52; *New York Steam Corp.* v. *City of New York,* 268 N. Y. 137; *Gaynor* v. *Marohn,* 268 N. Y. 417; *County Securities* v. *Seacord,* 278 N. Y. 34; see Richland, Constitutional City Home Rule in New York, 54 Col. L. Rev. 311 and 55 Col. L. Rev. 598). If the city's mandatory pension or retirement obligations are not paid, the city would be unable to maintain an efficient, modern civil service system. Because civil servants deal directly with such areas of undoubted State concern as education, public health, housing and transportation, the continuance of a sound civil service system is but an integral aspect of the State's interest in those fields.

With respect to the means provided by chapter 440, the power of the city to issue evidences of indebtedness constitutes an area of State concern (*Salzman* v. *Impelliteri,* 305 N. Y. 414; see Richland, Constitutional City Home Rule in New York, 55 Col. L. Rev. 598, 619-620). In such an area, the Constitution contemplates enactment by the Legislature of special laws affecting the power of local governments to finance by issuance of evidences of indebtedness. (N. Y. Const., art. VIII, § 2; art. IX, § 2, subd. [c], cl. [ii]; § 2, subd. [c], par. [4]; § 3, subd. [a], par. [3].)

Though we agree with our dissenting colleagues that the Constitution prohibits a city from incurring debts payable in

the future for objects or purposes of " purely transient useful-
ness " (*Cherey* v. *City of Long Beach,* 282 N. Y. 382, 390), we
cannot hold that payments by the city of current pension or
retirement liabilities involve payments of "purely transient
usefulness." Municipal default in the payment of pension or
retirement liabilities would undoubtedly jeopardize the continu-
ing employment, and impair the future recruitment, of civil
servants. It would signal the collapse of the city's civil service
system, or at least it is within the judgment of the Legislature
to foresee that result. Nor do we find any rational compulsion
to hold that the city's mandatory pension or retirement liabilities
must first be reduced to innumerable judgments before the Leg-
islature may constitutionally enact a special law to enable the
city to finance those fixed liabilities (*Cherey* v. *City of Long
Beach, supra,* p. 389). Finally, unlike our dissenting colleagues,
we neither detect in chapter 440 a clear usurpation by the Legis-
lature of prohibited power (*Matter of Ricker* v. *Village of Hemp-
stead,* 290 N. Y. 1, mot. for rearg. den. 290 N. Y. 862); nor do
we find any warrant to go beyond the face of the statute in
determining its constitutionality.

Accordingly, the order and judgment should be affirmed,
without costs.

BELDOCK, P. J., and BENJAMIN, J. (dissenting). We agree
with the majority that the city's debt limit is not exceeded by
the proposed bond issue. However, as we see it, the law author-
izing this bond issue is invalid because it violates the provisions
of the State Constitution dealing with home rule (art. IX, § 2)
and restrictions on local indebtedness (art. VIII, § 2).

With respect to section 2 of article VIII of the Constitution,
the simple question is whether a segment of the city's current,
ordinary expense budget may legally be singled out for deferred
payment by a five-year bond issue, or whether all sections of
such budget must be provided for out of current income.

With respect to home rule, the question is whether the special
law authorizing this bond issue is invalid because it was enacted
without a home rule request. This question, while seemingly
procedural in nature, in fact goes to the heart of the issue of
the city's autonomy with respect to its own governmental
affairs — and particularly the management of its own budget.

Considering first the question of the city's right to issue bonds
in order to obtain funds for current, ordinary budgetary needs,
we have concluded that section 2 of article VIII of the Constitu-
tion denies such right and forbids such practice. That section
restricts the issuance of municipal obligations to those con-

tracted for municipal purposes, and for a period not longer than the period of probable usefulness of the object or purpose for which the indebtedness is to be contracted. As the majority concedes, that provision plainly forbids bond issues for objects or purposes of " purely transient usefulness " (*Cherey* v. *City of Long Beach,* 282 N. Y. 382, 390). Put differently, it plainly bars the use of bond issues for the financing of current operating expenses of an ordinary, recurring nature.

The majority holds that the sole purpose of this bond issue is the financing of the city's pension liabilities for the year 1965; and that this purpose is not one of " purely transient usefulness " because default in the payment of these liabilities would jeopardize the city's civil service and perhaps cause its collapse. This argument is without basis in fact.

It clearly appears from this record that the needs of the retirement systems are merely the pretext, not the reason for this bond issue. In actuality, as the city's papers admit, the true purpose of this bond issue is the bridging of a general gap in the city's total current, ordinary expense budget. This bond issue could readily have been denominated one intended to meet the needs of any of the city's manifold other services.

Nowhere does the city claim that the retirement systems are less than solvent or unable to meet their obligations. On the contrary, it points out that, by law, current pension needs have a priority position in the city budget; and it asks for the right to sell these bonds upon the plea that other city services may be reduced if it has to meet its pension obligations.

In view of the priority given pension needs, the real purpose of this bond issue obviously is to provide deficit financing for other current, ordinary operating expenses in the city budget. Such current, ordinary expenses are of " purely transient usefulness " with no discernible period of probable future usefulness, and they consequently cannot be financed by bond issues because of the requirements of section 2 of article VIII of the Constitution (*Cherey* v. *City of Long Beach, supra*).

In sum, then, the facts negate the majority's argument based upon the claimed purpose of this bond issue; and the specter raised (of a possible collapse of the city's civil service) is but a myth.

On the argument of this appeal, the city urged that the Legislature's finding of a five-year period of probable usefulness of this bond issue is conclusive and cannot be reviewed by the courts. That might perhaps be so, if the purpose of the bond issue had in actual fact some period of probable future usefulness. But in *Cherey* v. *City of Long Beach* (*supra*) the court

clearly left open for judicial review the question whether the purpose of a bond issue does in fact have any period of probable future usefulness as well as a present usefulness. And we therefore have the power to find, as we do in this case, that the bond issue at bar in truth has no period of probable future usefulness at all.

The city says that the invalidation of this bond issue may require it to "reduce other important public and social welfare purposes." If that be so, the proper remedy is the substitution of lawful revenue producing programs. Current needs must be budgeted and current sources of revenue must be found, however unpalatable any new taxes may be. Indeed, it has not been suggested here that this bond issue would obviate such taxes. Rather is it intended to retire these bonds by increased real estate taxes, if authority for such increase over the present constitutional limit is granted first by action of the Legislature (proposing a constitutional amendment) and thereafter by a ratifying vote of the electorate. In lieu, therefore, of providing for present needs out of current revenues, this program contemplates some hundreds of millions of deferred indebtedness to be paid in the future by additional real estate taxes, not presently permitted by law, *if* such permission is ultimately given. If such permission is *not* given, the obligation to repay these huge sums will continue, unsupported by a program for repayment. We find nothing in the Constitution to support so speculative a fiscal adventure with the city's solvency.

Turning now to the second question posed at the outset of this dissent, we believe the statute at bar also violates the home rule provisions of the State Constitution.

Absent a home rule request, section 2 (subd. [b], par. [2]) of article IX of the Constitution prohibits the Legislature from enacting a special law relating "to the property, affairs or government of any local government".

The majority says that payment of the city's pension liabilities is "a matter of State concern exempting" the subject statute from the home rule article of the Constitution. For several reasons, we disagree with that conclusion.

As we have earlier pointed out, the claim that this bond issue is needed for the payment of civil service pensions is a transparent subterfuge. The fact is that by this law the Legislature has simply authorized the city to meet part of its ordinary, current expense budget by borrowing instead of taxing. And it has done this without benefit of the required home rule request. This it cannot do.

It is, of course, true that the words of section 2 of article IX of the Constitution cannot be read so as to bar the Legislature from enacting special laws affecting a city where the matter is one of *paramount* State concern, even in the absence of a home rule message. But that does not mean that this section can be emasculated by such construction as would validate special laws involving matters *not* of paramount State concern.

Undoubtedly, the State has a proper interest in practically all aspects of local government. But "it is only matters of paramount State concern, as discriminated from those of dominant local significance, that are not subject to the" home rule provisions of the Constitution. (*New York Steam Corp.* v. *City of New York,* 268 N. Y. 137, 143.) Control of the local purse strings and management of the local budget clearly are matters of dominant local concern (*Adler* v. *Deegan,* 251 N. Y. 467). As Chief Judge CARDOZO said in *Adler* (p. 489): "There are some affairs intimately connected with the exercise by the city of its corporate functions, which are city affairs only. * * * Most important of all perhaps is the control of the locality over payments from local purse".

Without the required home rule request, the Legislature enacted the statute at bar, which empowers the Mayor to borrow $255,800,000 to cover a shortage in the city's current expense budget, caused by the city's failure to provide for current expenses in the manner contemplated by the Constitution and dictated by plain principles of responsible fiscal policy. The subject matter of this statute (local budget-making and control of the local purse strings) is an area of dominant local concern (*Adler* v. *Deegan, supra*). Hence, the absence of a home rule request renders the statute invalid (*New York Steam Corp.* v. *City of New York, supra*).

In view of our conclusion that the statute at bar is invalid, we believe the order and judgment on appeal should be reversed, and that judgment should be granted in favor of the plaintiff declaring the statute unconstitutional and enjoining the defendants from issuing and selling the bonds therein authorized.

UGHETTA and RABIN, JJ., concur with HOPKINS, J.; BELDOCK, P. J., and BENJAMIN, J., dissent in separate opinion.

Order and judgment affirmed, without costs.