Leon D. Lazer, J.
During its regular 1975 session the Legislature adopted a law (L 1975, ch 736, hereafter "the statute”) which purports to abolish the present board of trustees of the Suffolk Cooperative Library System and to provide for the election of a new board, under a new apportionment formula, to take office on January 1, 1976. The president of the current board, whose term of office will be prematurely terminated, has brought an action for a judgment declaring the invalidity of the new law and has moved to enjoin its implementation pendente lite. The named defendant is the secretary of the old board and the person directed in the statute to implement its provisions. He has not answered and pursuant to the instructions of the existing board he stands mute. One of the member library districts and a candidate for trustee under the provisions of the new statute have intervened in the action and have cross-moved for summary judgment declaring the constitutionality of the statute. The Attorney-General has also appeared in opposition to the plaintiff’s motion and in support of the statute.
The Suffolk Cooperative Library System was chartered by the Board of Regents in 1961 pursuant to section 255 of the Education Law. Under the law, the trustees have been elected for five-year terms by the boards of trustees of the member libraries. Under the charter, one trustee is selected by the combined vote of member libraries in each town except that the libraries in the towns of East Hampton and Shelter Island together elect one trustee. The new statute provides for the same number of trustees but decreases their terms of office to three years. One trustee is to be elected by the libraries in each of the more populous western towns in the county with additional trustees selected by four caucuses of various combinations of towns. The formula is intended to furnish the more populous areas of the county with greater representation.
The gravamen of the complaint is that the statute violates the equal protection and due process clauses of the Fourteenth Amendment and unlawfully shortens the terms of office of plaintiff and her colleagues on the present board. According to the intervenors and the Attorney-General the decision of the Court of Appeals in Lanza v Wagner (11 NY2d 317, app dsmd for want of a substantial Federal question 371 US 74, cert den 371 US 901), is dispositive of plaintiff’s contentions. The issue in Lanza was the validity of a legislative enactment which reorganized the New York City Board of Education and re- *83 suited in the termination of existing terms of office. Judge Fuld wrote (p 324): "We may quickly dispose of the attack upon the statute on the score of its having shortened the plaintiffs’ terms of office. The office held by each of the plaintiffs was concededly created by the Legislature, not by the Constitution, and there is no constitutional inhibition against the mere shortening of the term of an existing statutory office by legislation aimed at the office rather than at its incumbent. [Citations omitted.] Public offices are created for the benefit of the public, and not granted for the benefit of the incumbent, and the office holder has no contractual, vested or property right in the office. [Citation omitted.] Absent any express constitutional limitation, the Legislature has full and unquestionable power to abolish an office of its creation or to modify its term, or other incidents attending it, in the public interest, even though the effect may be to curtail an incumbent’s unexpired term.”
In an effort to distinguish Lanza, plaintiff argues that: (1) the co-operative library system is a "quasi-agency” and not a "public corporation”; and, (2) her position is not a "public office”.
Co-operative library systems are creatures of the State Legislature which authorizes their establishment through the Education Law. Section 255 of the Education Law ("Establishment of a public library”) provides in subdivision 2 that a cooperative library system may be established upon the request of two or more libraries chartered by the Board of Regents when it appears to the commissioner that such a system "will result in improved and expanded library service to the area”. All 52 member libraries in the Suffolk system are either public or free association libraries and the trustees are elected by vote of their boards of trustees. The principal source of revenue is State aid. Clearly, co-operative library systems are public institutions (1972 Opns Atty Gen 24) and not private eleemosynary organizations (see Matter of Carson v Nyquist, 59 Misc 2d 577). Since the trustees are the officers of the cooperative library system, the position of trustee is a public office (23 Op St Compt, 1967, p 767).
A position is a public office when it is created by law with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned and which is continuing in its nature and not occasional or intermittent (47 NY Jur, Public *84 Officer and Employees, § 12). The primary, necessary and fundamental test of a public office is that it should involve the exercise of some portion of the sovereign power of the State (People ex rel. Henry v Nostrand, 46 NY 375). A public office is not property within the provision of the Constitution prohibiting deprivation of property without due process of law (People ex rel. Woodward v Draper, 67 Misc 460, affd 142 App Div 102, affd 202 NY 612).
The plaintiff’s allegation that the Legislature has unlawfully infringed upon the powers of the Board of Regents because that body chartered the Suffolk system is patently frivolous. The same Constitution which creates the Board of Regents provides that the Legislature may increase, modify or diminish its corporate powers (NY Const, art XI, § 2). The current exercise of that constitutional prerogative simply involved a legislative modification of a power granted to the Board of Regents by statute (Education Law, § 255) in the first instance.
The plaintiff asserts that the new enactment, which applies solely to Suffolk County, is a special law and that a home rule message for its passage was thus required. Although the statute is not a formal amendment of the Education Law, it is patently an exercise of the legislative power in relation to public education. Had it been enacted as an amendment to the Education Law it would, on the authority of Matter of Corning v Donohue (29 NY2d 209, affg 37 AD2d 213), plainly be a general law even though it relates to a single locality. The fact that a general act contains provisions of such restricted applicability does not constitute the act a local one, either wholly or pro tanto (Richards v Richards, 76 NY 186; see Sloup v Town of Islip, 78 Misc 2d 366). However, even if the statute is denominated a special law it is exempt from the provisions of the local governments article of the State Constitution by virtue of its subject matter. Section 3 of article IX, insofar as it is relevant, provides as follows:
"(a) Except as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to: * * *
"(3) Matters other than the property, affairs or government of a local government.” Article IX (§ 2, par [b], cl [2]) empowers the Legislature to act in relation to the "property, affairs or government of any local government” only by general law or by special law pursuant to a request by the local govern *85 ment or on a certificate of necessity from the Governor and a two-thirds vote of the Legislature. The Legislature is free to act without reference to the restrictions of article IX if a statute relates to a matter of State concern rather than to the "property, affairs or government” of the local government (Whalen v Wagner, 2 Misc 2d 89, affd 3 AD2d 936, affd 4 NY2d 575; Bugeja v City of New York, 24 AD2d 151).
The term "property, affairs or government” is a term of art with a limited meaning determined by the courts (Adler v Deegan, 251 NY 467; City of Corning v Corning Police Dept. of Corning City Unit of Steuben County Charter, 81 Misc 2d 294). Although there may be difficulty at times in allocating interests to the State or municipality (see Judge Cardozo’s concurring opinion in Adler v Deegan, supra), the State’s interest in co-operative library systems is unmistakable. The creation of a co-operative library system is authorized by the very same section which authorizes the creation of other public libraries and the statute provides that such a system can only be established with the approval of the commissioner (Education Law, § 255). The Suffolk Cooperative Library System was chartered by the Board of Regents after having been approved by the commissioner and it is subject to State regulation and is the recipient of State funds. That it is a matter of State rather than local concern is more manifest than is true of many matters which have been so categorized. For example, statutes relating to rapid transit systems, housing and sewer systems in specified municipalities have been adjudged to be outside the scope of the term "property, affairs or government” and hence not subject to article IX restrictions (see Adler v Deegan, supra; Robertson v Zimmermann, 268 NY 52; Bugeja v City of New York, supra).
Plaintiff’s ultimate argument is simply that the statute is an "invidious discrimination” within the ambit of recently evolved theories of substantive due process. Her position seems to be that it is discriminatory per se to single out the Suffolk library system for reapportionment when one-man one-vote principles are not necessarily applicable to such a system, especially since the State Legislature acted upon the recommendation of the county legislature which in turn was pressured by dissident local library boards seeking to oust the present management.
There is nothing improper in what the Legislature did. The statute is not a bill of attainder. It does not preclude the *86 present trustees from being re-elected to the board. As in Lanza v Wagner (11 NY2d 317, supra), the legislation appears to have been directed at the office of trustee and not at the incumbents of the office. Furthermore, there is no principle of law which precludes application of reapportionment principles to situations where they are not mandated should the Legislature deem it desirable. There is a presumption that the Legislature has investigated and found the facts to support challenged legislation (I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263; People v McNair, 46 AD2d 476), and the courts will not make a separate investigation of the facts or attempt to decide whether the Legislature has reached a correct conclusion with respect to them (Matter of Viemeister v White, 179 NY 235). Neither is it proper for the courts to inquire into legislative motives (Blumberg v City of Yonkers, 41 AD2d 300).
Plaintiff has not rebutted the strong presumption that the statute is constitutional (Defiance Milk Products Co. v Du Mond, 309 NY 537) and she has not shown a reasonable probability of ultimate success (DeLury v City of New York, 48 AD2d 405).
The motion for a preliminary injunction is denied. The intervenor’s cross motion for summary judgment is granted.
Submit order-judgment declaring the constitutionality of the statute.