JAY RONALD Co., INC., Suing on Behalf of Itself and All Other Stockholders of the Marshall Mortgage Corporation Similarly Situated, Appellant and Respondent, *v.* MARSHALL MORTGAGE CORPORATION, Respondent and Appellant, et al., Defendants.

Argued June 17, 1943; decided November 24, 1943.

*Harold L. Rosenstein* for plaintiff, appellant and respondent. The excess capital constituted a debt payable to those who on the date of the capital reduction were holders of the particular class or classes of stock which had represented the portion or portions of capital reduced. The obligation to return the retired capital to those who contributed it was unaffected by the statutes from 1825 to 1939. Those of the statutes from 1882 to 1939 which referred to excess capital merely in some cases made it possible for the directors to determine the time when and the manner in which the debt was to be paid but in

no way affected the corporate obligation to pay the debt. (*Strong* v. *Brooklyn Cross-Town R. R. Co.*, 93 N. Y. 426; *Randall* v. *Bailey*, 288 N. Y. 280; *Seeley* v. *New York National Exchange Bank*, 8 *Daly* 400, 78 N. Y. 608; *Harper* v. *State Bank of Paw Paw*, 21 N. E. 2d 47; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Jerome* v. *Cogswell*, 204 U. S. 1; *Irvine* v. *Old Kentucky Distillery*, 208 Ky. 414; *McCann* v. *First Nat. Bank*, 112 Ind. 354; *Jermain* v. *Lake Shore & Michigan So. Ry. Co.*, 91 N. Y. 483; *Ford* v. *Snook*, 240 N. Y. 624; *Hopper* v. *Sage*, 112 N. Y. 530; *Wiedersum* v. *Atlantic Cement Products, Inc.*, 261 App. Div. 305; *Breslav* v. *New York & Queens Electric L. & P. Co.*, 249 App. Div. 181, 273 N. Y. 593.) The 1939 amendment does not apply to pre-existing corporations. (*Waddey* v. *Waddey*, 290 N. Y. 251; *Addiss* v. *Selig*, 264 N. Y. 274; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24; *New York & Oswego M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Holmes* v. *John Hancock Mut. Life Ins. Co.*, 288 N. Y. 106; *People* v. *O'Brien*, 111 N. Y. 1.) The 1939 statute is unconstitutional if it applies to pre-existing corporations. (*Strout* v. *Cross, Austin & Ireland Lumber Co.*, 283 N. Y. 406; *Farmers & Merchants Bank* v. *Federal Reserve Bank*, 262 U. S. 649; *Weiler* v. *Dry Dock Sav. Institution*, 258 App. Div. 581; *Lord* v. *Equitable Life Assur. Soc.* 194 N. Y. 212; *Parish* v. *New York Produce Exchange*, 169 N. Y. 34; *New York & Oswego M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Seeley* v. *New York National Exchange Bank*, 78 N. Y. 608; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257.)

*Samuel A. Telsey* for defendant, respondent and appellant. The history and course of legislation exhibit a consistent and uninterrupted policy to permit stockholders to determine the disposition of a surplus resulting from a reduction of capital. (*Sutherland* v. *Olcott*, 95 N. Y. 93; *People ex rel. Eden Musee Americain Co.* v. *Carr*, 36 Hun, 488; *Merz* v. *Interior Conduit & Insulation Co.*, 87 Hun, 430; *Tyrrell* v. *The Mayor*, 159 N. Y. 239; *Hawes* v. *Fliegler*, 87 Minn. 319; *Holden* v. *Minnesota*, 137 U. S. 483.) When enacting chapter 787 of the Laws of 1923, the Legislature did not intend to revive the rule of the *Seeley* case (8 Daly 400). (*Matter of Kinney*, 270 N. Y. 423; *Matter of Duer*, 270 N. Y. 343; *Caesar* v. *Bernard*, 156

App. Div. 724, 209 N. Y. 570; *People* v. *Dwyer,* 215 N. Y. 46; *Woods* v. *Supervisors,* 136 N. Y. 403; *Matter of Kiernan,* 62 N. Y. 457; *Matter of N. Y. Institution,* 121 N. Y. 234; *Heckmann* v. *Pinkney,* 81 N. Y. 211; *Ingersoll* v. *Nassau Electric R. R. Co.,* 157 N. Y. 453; *Randall* v. *Bailey,* 288 N. Y. 280.) Chapter 334 of the Laws of 1939, amending section 36, subdivision 15, of the Stock Corporation Law, deals with matters of internal administration and management of corporate business. It is free from the restriction upon legislation impairing the obligation of contracts, and may operate retrospectively. (*Looker* v. *Maynard,* 179 U. S. 46; *Schenectady & Saratoga Plank Road Co.* v. *Thatcher,* 11 N. Y. 102; *Buffalo & N. Y. City R. R. Co.* v. *Dudley,* 14 N. Y. 336; *Matter of Lee & Co's Bank,* 21 N. Y. 9, *sub nom. Sherman* v. *Smith,* 1 Black 587; *Union Hotel Co.* v. *Hersee,* 79 N. Y. 454; *People* v. *O'Brien,* 111 N. Y. 1; *Mayor* v. *Twenty-third St. Ry. Co.,* 113 N. Y. 311; *Grobe* v. *Erie County Mut. Ins. Co.,* 39 App. Div. 183, 169 N. Y. 613; *Hinckley* v. *Schwarzschild & Sulzberger Co.,* 107 App. Div. 470; *Colby* v. *Equitable Trust Co.,* 124 App. Div. 262; *Davis* v. *Louisville Gas & Electric Co.,* 16 Del. Ch. 157; *Shaw* v. *N. Y. El. R. R. Co.,* 187 N. Y. 186.) Under the law existing when the defendant corporation was organized, the distribution of the excess capital was not mandatory. (L. 1923, ch. 787; L. 1924, ch. 441.) Upon dissolution, the capital contributed by common stockholders might legally become subject to the payment of dividends on preferred stock.

*Nathan L. Miller, Eustace Seligman, Howard T. Milman* and *John C. Bruton* for Breed, Abbott & Morgan et al., *amici curiae.* Since 1882 to the present time, the doctrine of the *Seeley* case has not been the law in New York. (*Seeley* v. *New York National Exchange Bank,* 8 Daly 400, 78 N. Y. 608; *Matter of Kinney,* 279 N. Y. 423.) The New York law since 1901 has been construed as not requiring distribution of surplus resulting from reduction. (*Matter of Kinney,* 279 N. Y. 423.) The 1939 statute expressly permitting the retention of surplus resulting from a capital reduction applies to pre-existing corporations. (*Randall* v. *Bailey,* 288 N. Y. 280; *Hinckley* v. *Schwarzschild & Sulzberger Co.,* 107 App. Div. 470; 193 N. Y. 599; *Matter of Buffalo R. R. Co.,* 37 N. Y. S. 1048;

*Matter of Bergdorf,* 149 App. Div. 529; 206 N. Y. 309; *Minor* v. *Erie R. R. Co.,* 171 N. Y. 566 199 U. S. 613; *Breslav* v. *New York & Queens Electric L. & P. Co.,* 249 App. Div. 181, 273 N. Y. 593; *Roberts* v. *Roberts-Wicks Co.,* 184 N. Y. 257; *Albrecht, Maguire & Co.* v. *General Plastics, Inc.,* 256 App. Div. 134, 280 N. Y. 840; *Matter of Rochester Water Commissioners,* 66 N. Y. 413.) The 1939 statute is constitutional. (*Dartmouth College Case,* 4 Wheat. 518; *Lord* v. *Equitable Life Assur. Society,* 194 N. Y. 212; *Davison* v. *Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500; *Breslav* v. *New York & Queens Electric L. & P. Co.,* 249 App. Div. 181, 273 N. Y. 593; *Albrecht, Maguire & Co.* v. *General Plastics, Inc.,* 256 App. Div. 134, 280 N. Y. 840; *Hinckley* v. *Schwarzchild & Sulzberger Co.,* 107 App. Div. 470, 193 N. Y. 599; *Wiedersum* v. *Atlantic Cement Products, Inc.,* 261 App. Div. 305; *Joslyn* v. *Pacific Mail S. S. Co.,* 12 Abb. Pr. [N. S.] 329).

LOUGHRAN, J. This controversy was submitted to the Appellate Division upon agreed facts pursuant to Civil Practice Act, sections 546–548.

The defendants are a domestic corporation and its officers and directors. The corporate defendant was organized in 1926 with a stated capital of $300,000 represented by 100,000 common shares of no par value. Since April, 1938, a varying number of these shares have been in the ownership of the plaintiff.

At a meeting of the stockholders held on January 22, 1940, the stated capital of the corporate defendant was reduced from $300,000 to $100,000 and the resulting capital surplus of $200,000 was transferred to a surplus account "for all purposes for which a surplus may be used." When this corporate action was taken the assets of the corporate defendant were of an actual value in excess of $300,000 over and above its liabilities, exclusive of its liability on its capital stock. A certificate of such capital reduction was filed with the Secretary of State on January 31, 1940. These corporate proceedings were taken without participation by the plaintiff as a stockholder of the corporate defendant.

The Appellate Division has granted to the plaintiff a judgment which reads in part as follows: "The capital surplus of $200,000 created by the reduction in capital of the defendant corporation may not be retained by the defendant corporation

as a corporate surplus, or for any other purpose, but said capital surplus shall be distributed in cash, without interest, among the persons who were stockholders of record * .* * at the close of business on January 31, 1940, pro rata according to their then respective shares.'' As appellant here, the corporate defendant centers its attack upon this direction of the plaintiff's judgment.

Plaintiff maintains and the Appellate Division has held that a true surplus resulting from a reduction of corporate capital is at once owed by the corporation as a debt to its stockholders in accordance with their respective interests. So it was laid down in *Seeley* v. *New York National Exchange Bank* (8 Daly 400, affd. on opinion below, 78 N. Y. 608). The reasons for that decision were precisely given. It was said by the court of first instance: '' The abandonment by a corporation of all its corporate rights gives the stockholders a right to the distribution of all the net assets. Why should not an abandonment of a portion of those rights give the stockholders a right of distribution *pro tanto?* * * * That [surplus] money was paid as capital, and if it be no longer needed for that purpose, and if it be not required for the payment of debts, it has accomplished the end for which it was subscribed, and it ought to be returned to the shareholders. * * * If the retired capital be a liability of the corporation in favor of the shareholders who give up the stock that is called in, the payment of that debt cannot lie in any man's discretion.'' (8 Daly at pp. 402, 403.)

The *Seeley* case was not decided under any New York statute. Our State courts there dealt with Federal legislation permitting national banks to reduce capital. No provision for disposition of surplus had been made therein. We first inquire, then, whether the reasoning of the *Seeley* case is compatible with the applicable New York statutes regulating reduction of the capital of stock corporations.

The decision of the *Seeley* case was made by this court in 1879. The first New York statute that made provision for the disposition of surplus resulting from reduction of corporate capital was chapter 306 of the Laws of 1882. The provision then made was that '' the amount of capital left in the possession of the company over and above the amount to which the capital

shall be so reduced shall be returned to the stockholders pro rata at such times and in such manner as the trustees or directors shall determine.'' We think this express allowance to directors of discretion to fix the time and manner of the return of such a surplus can hardly be reconciled with the rigid ideas on which the decision of the *Seeley* case was made to turn.

The statute so enacted in 1882 remained substantially unchanged until 1901. The text of chapter 354 of the Laws of that year was in part as follows: '' Any domestic corporation may increase or reduce its capital stock in the manner herein provided  *  *  *.'' (§ 44.) '' Every such increase or reduction must be authorized either by the unanimous consent of the stockholders, expressed in writing and filed in the office of the secretary of state and in the office of the clerk of the county in which the principal business office of the corporation is located, or by a vote of the stockholders owning at least a majority of the stock of the corporation, taken at a meeting of the stockholders specially called for that purpose in the manner provided by law or by the by-laws.'' (§ 45.) '' If the capital stock is reduced, the amount of capital over and above the amount of the reduced capital shall, *if the meeting or consents so determine or provide,* be returned to the stockholders pro rata, at such times and in such manner as the directors shall determine.'' (§ 46. The emphasis is ours.) This unqualified license to the stockholders to say whether or no there should be any distribution of such a surplus seems to us to have been a clear negation of the rule of the *Seeley* case.

So the law stood until 1923. All provisions respecting disposition of surplus resulting from reduction of corporate capital were left out of the Stock Corporation Law as it was then recast by chapter 787 of the laws of that year, with the result that the stockholders were no longer authorized to say whether such a surplus should be returned. But this omission, as we see it, affords no reason for saying that a distribution of every such surplus thereupon became compulsory upon the directors of the corporation. So belated a reversal of policy would scarcely have been conceivable in the face of the new comprehension of corporate structure that in 1912 had led to the introduction of no par shares. (See *Vaughan* v. *State of New York,* 272 N. Y. 102.)

At this point it is in order to answer the claim of an absence prior to 1929 of any statutory provision respecting disposition of retired capital of no par corporations. Section 23 of the Stock Corporation Law, added by chapter 351 of the Laws of 1912, said that for the purpose of any statutory provision relating to the amount of the capital stock of a corporation or the amount or par value of its shares, the aggregate amount of the capital stock of a no par corporation was in general to be deemed to be the aggregate amount of its capital. Thus, as we think, any general statutory provision regulating reductions of par stock was made applicable to reductions of no par stock,— for there was no reason at all why reductions of no par stock should result differently from reductions of par stock.

Section 8 of chapter 441 of the Laws of 1924 reestablished the capacity of the stockholders of a corporation having par value shares to say " that the excess over the amount to which the capital stock is reduced shall be returned *in whole or in part* to the stockholders pro rata, at such times and in such manner as the directors shall determine ". (The accentuated words were new.) In the main, this enactment restored the law to what it had been from 1901 to 1923; then by section 4 of chapter 652 of the Laws of 1929, the stockholders of no par value corporations were explicitly licensed to compel a return on a reduction of capital.

The present proceedings to reduce the capital of this defendant corporation were taken under section 36 (15) of the Stock Corporation Law as amended by chapter 334 of the Laws of 1939. It was thereby enacted that " the certificate [of the stockholders] shall provide that the surplus, if any, resulting from such reduction shall be available for any one or more of the following purposes: (a) to be used for any purpose for which surplus may be used; or (b) to be reserved and used for specified purposes; or (c) to be returned to the stockholders, according to their respective rights, at the times and in the manner specified."

We have now canvassed the statutory provisions which seem to us to control the present controversy. Our conclusion is that from the year 1901 to the present time no distribution of a surplus created by reduction of capital of a stock corporation has been required by the law of New York except when pur-

suant to statute the stockholders so decreed. In that view, the 1939 statute last above indicated was in essence a declaration of what had been the law from a time long antecedent to the organization of the corporate defendant in 1926. It follows that the 1939 statute was here applicable and sanctioned the disposition of the surplus in question as made by the stockholders of the corporate defendant.

There are expressions in *Strong* v. *Brooklyn Cross-Town R. R. Co.* (93 N. Y. 426) and in *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257) friendly to the *Seeley* case (*supra*). But the question now decided was not presented in the *Strong* case or in the *Roberts* case and we have felt free to dispose of it as an open matter.

The judgment, so far as appealed from by the corporate defendant, should be reversed, and judgment directed for that defendant as prayed for in the submission, without costs. The cross-appeal of the plaintiff from denial of its demand for interest and counsel fees and for directions as to distribution of the surplus in question is now futile and should be dismissed, without costs.

LEHMAN, Ch. J., RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgment accordingly.