William E. McCltjsky, J.
This is an action for a declaratory judgment. The amended complaint herein sets forth some 7 causes of action in 64 numbered paragraphs. Neither the amended complaint nor the answer is a notable example of conciseness. But the general purport of the complaint is to secure a declaration that section 199 of the Insurance Law of this State, insofar as it is sought to be applied to the stockholders of the Farmers and Traders Life Insurance Company, is unconstitutional.
The problems involved in this litigation have been before the courts since 1953. The various phases are revealed in Young v. Taber (284 App. Div. 829, affd. 308 N. Y. 687); Matter of Farmers & Traders Life Ins. Co. (285 App. Div. 1117); Matter of Young v. Farmers & Traders Life Ins. Co. (306 N. Y. 888) and Sylvander v. Taber (6 A D 2d 987). The sequel of the action of Young v. Taber (supra) was an order by this court entered March 11, 1959 dismissing that action for failure to prosecute for several years.
The background of the matters which form the basis of this action reach back into legal history. The Supreme Court of the United States ruled in the case of Dartmouth Coll. v. Woodward (4 Wheat. [17 U. S.] 518) that a State cannot impair the obligations of a contract. The contract therein was the charter granted by the State of New Hampshire to the college. The charter or the law under which it was granted must contain the reservation of the power to alter or amend or revoke. Following that decision the Constitutions of the various States contained such a reservation. (N. Y. Const., art. X, § 1.) The section in question provides for the formation of corporations under general laws. The pertinent clause reads as follows: “All general laws and special acts passed pursuant to this section may be altered from time to time or repealed,”
That same provision was in the Constitution of 1894 (art. VIII, § 1). That was the Constitution in effect when the Insurance Law herein questioned was enacted.
*1007 In the latter part of 1912, pursuant to the provisions of the Insurance Law of 1909, The Farmers National Life Insurance Company was incorporated. Its authorized capital stock was $200,000 with an issue of 2,000 shares of the par value of $100 each. It was to engage in the business of writing nonparticipating life insurance policies or annuities.
Later and in August, 1914 an application was made to the Supreme Court for an order to change its name to The Farmers and Traders Life Insurance Company. The order then granted provided for the change of name to become effective on September 17,1914. It is still known by the name then adopted.
Some time later in the year 1919 further amendments to the charter took place. One not pertinent to the causes herein related to the classification and election of directors. The second one dealt with a proposed increase in the amount of capital stock from $200,000 to $300,000 and in number from 2,000 to 3,000 the par value remaining the same. This was finally achieved October 15, 1919. It is worthy of note that one of the prime movers in all these changes was one Thomas O. Young, father of John O. Young, one of the plaintiffs herein and one of the individuals from whom John O. Young secured the stock he presently possesses.
Thereafter and on or about August, 1922 a further change was made in that the charter was amended to extend the field and type of policies to be issued.
In January, 1953 a voting trust agreement was entered into between some of the present defendants for the purpose of soliciting stockholders of the company to endeavor to convert the corporation from a stock company to a mutual life insurance company pursuant to section 199 of the Insurance Law. The effect of the decision in Young v. Taber (supra) was an affirmation of the validity of the voting trust agreement. The legal effect has become a factual admission by the stipulation entered into prior to the trial herein.
Section 199 of the Insurance Law, in subdivision 2 thereof, provides for mutualization. Four approvals must be obtained before any mutualization plan may become effective. First, it must be approved by a majority vote of the board of directors, secondly, the plan must be approved by a majority vote of the outstanding capital stock at a meeting of the stockholders called for that purpose, thirdly, the plan must have been approved by a majority of the policyholders eligible, i.e. who have had a policy for at least $1,000 and which has been in force for at least one year before the voting date, and who are present either in person or proxy and vote or vote by mail, fourthly, the plan *1008 shall have been submitted to the Superintendent of Insurance of this State and shall have been approved as to conformity with the requirements of the chapter and not prejudicial to the policyholders and the insuring public. There are other specific features, detailing further procedures which are not pertinent in this stage of our examination. Admittedly a majority vote of the board of directors in favor of the plan was cast at a special meeting of the board called for that purpose on May 15, 1954. Thereafter a special meeting of the stockholders was held on July 19, 1954 to discuss the plan. A majority of the stockholders voted in favor of the plan. The present plaintiffs Earl C. Sylvander, Margaret C. Sylvander and John 0. Young participated in the meeting and voted against the plan.
The next step was the approval by the policyholders. There were about 50,000 at the time. Upon the voting day 7,704 eligible policyholders were present and 7,098 voted in favor of the plan and 606 voted against it.
On September 14, 1954, the corporation submitted the plan to the Superintendent of Insurance for his approval. On October 11, 1954 John O. Young as a policyholder and stockholder and the Sylvanders as stockholders appeared by attorneys and filed objections to the plan. A lengthy hearing was held before one of the Deputy Superintendents, deputized for the purpose. It is again worthy of note that three of the plaintiffs who maintain the unconstitutionality of section 199 of the Insurance Law vigorously participated in the processes and procedures of that very section. After a lengthy hearing upon the subject the Superintendent of Insurance approved the plan of mutualization on November 15, 1954 in accordance with the required procedure.
The plan of mutualization provided that upon complying with the formal requirements of section 199 aforesaid the stockholders would each receive $1,000 for each share of stock surrendered to the mutualization trustees, named in the plan, in installments. A mutualization certificate would be issued to each stockholder surrendering his stock. Provision was made for the payment of an initial sum of $200 and the payment of the balance over a period of about 10 years. Interest upon the balances was to be paid at the rate of 3% per annum. The funds to meet the commitments were to be derived from the accumulated net earnings of the nonparticipating business only. The accumulated net earnings ‘ ‘ as defined ” “ shall be the surplus to policyholders as reported in the company’s annual statement as of December 31, 1953 plus the net earnings on nonpartieipating business thereafter less any principal payments made *1009 to the stockholders.” The manner in which net earnings on nonparticipating policies were to be determined was set up in detail.
From the evidence submitted, it appears that Earl C. Sylvander is the holder at this time of 79 shares of stock acquired at intervals from June 10, 1953 up to August 2, 1957 at prices ranging from about $200 per share up to in excess of $1,000 per share. His wife and coplaintiff was and is the owner of two shares acquired June 10, 1953. Saydie H. Terry is the owner of two shares purchased November 22, 1944. John O. Young is the owner of 74 shares of stock acquired between January 19, 1934 and April 15, 1953. Most of his stock was acquired through two estates, wherein the stock in question was valued at about $220 per share. The number of shares surrendered to the trustees amounted to 2,784 but the plaintiffs own in excess of 5% of the stock. The plaintiffs have executed a voting and sale trust agreement designating as irrevocable proxies Lawrence Sovik (not the named plaintiff) and Harlow Ansell.
Summary statements of the business of the company are in evidence. They reflect the expected condition upon the transition from nonparticipating to participating policies. The fund set aside to pay off the surrendered stock under the mutualization plan has likewise increased.
During the course of the trial, objections were made to the statements and exhibits offered. To facilitate the trial, the court reserved decision upon the objections interposed. The objection to statement 14 setting forth the number of policyholders at the time of mutualization is overruled.
An objection was interposed as to the materiality and relevancy of statement No. 8 with its supporting exhibit. Whether or. not the trustees under the voting trust agreement mailed a prospectus to the stockholders is irrelevant to the issues of this case. The objections are accordingly sustained, for the parties have conceded the validity of the voting trust agreement and misrepresentation is not an issue in this action.
The objection to the tenth statement is likewise sustained. In view of the concession made as to the trust agreement, the statement of fact has no relevancy. Objections to two exhibits dealing with communications relative to the hearing before the Superintendent of Insurance are sustained. Exception may be deemed to have been made nunc pro tunc.
The seven causes of action attack section 199 of the Insurance Law from the viewpoint of the Federal Constitution and its several .amendments and the State Constitution. Four of *1010 the causes of action are Federally based and three are founded on claimed State violations.
The basic objection is that section 199 aforesaid impairs the obligation of the contract, existing between the corporation and the State.
Section 10 of article I of the Constitution of the United States provides as follows: “No State shall * * * pass any * * * Law impairing the Obligation of Contracts ”.
It is argued by the plaintiffs that the mutualization of the company was an impairment of a contract. Therefore, the plaintiffs conclude, section 199 of the Insurance Law is unconstitutional and invalid. What contract was impaired? Was it the charter creating the corporation? Or was it the share of stock issued to the stockholder, plaintiff or defendant?
A corporation is defined as any group of persons treated by law as a person .or unity having rights or liabilities distinct from the persons or objects composing it. (Cf. Webster’s International Dictionary [2d ed.].) There are three general classifications of corporations recognized in this State. (General Corporation Law, § 2.) But no matter what the classification each has a charter. A stock corporation is defined as a corporation having shares of stock and which is authorized by law to distribute dividends to the holders thereof. (Cf. General Corporation Law, § 3, subd. 5.) In the same section (subd. 14) is incorporated the definition of a “ certificate of incorporation”. It includes articles of association or any other written instruments required by law to be filed to create a corporation. It should be noted the specific powers and limitations are set forth in the certificate of incorporation. By general statutes corporations have such general powers and rights set forth therein, whether or not specifically set forth in the charter. There are incorporated therein any limitations or conditions as may be in the Contitution of the State of New York. Whether set forth in so many words or not, the seeds of mutation are embedded constitutionally in every corporate charter issued by this State, (Cf. N. Y. Const., art. X, § 1.) The mere fact that a law or an amendment may radically alter the corporate business does not render such change invalid. Changes made by the Prohibition Amendment are still fresh in the minds of the public. The stock certificate is not the charter. It is a contract between the corporation, the other stockholders and the stockholder himself. It “ ‘is the muniment of [his] title, and evidence of his right.’ ” (Strout v. Cross, Austin & Ireland Lbr. Co., 283 N. Y. 406, 413.)
*1011 A share of stock carries with it the right to dividends, if any be declared, and in the event of dissolution, the right to a proportionate share in the net distributable assets.
The very argument adduced by the plaintiffs is based upon the assumption that its charter recognized the right to change but seems to hold that any changes made must be within the literal framework of the Insurance Law of 1911.
Two sections of the Insurance Law of 1911 are applicable. Section 95 provided as follows:
“ § 95. Conversion of a stock life insurance corporation into a mutual life insurance corporation. Any domestic stock life insurance corporation, whether incorporated under the general law or by special act, may become a mutual life insurance corporation, and to that end may carry out a plan for the acquisition of shares of its capital stock, provided, however, that such plan: (1) Shall have been adopted by a vote of a majority of the directors of such corporation; (2) shall have been approved by a vote of stockholders representing a majority of the capital at a meeting of stockholders called for the purpose; (3) shall have been approved by a majority vote at a meeting called for the purpose, in such manner as shall be provided for in such plan, of policyholders each insured in at least one thousand dollars and whose insurance shall then be in force and shall have been in force for at least one year prior to such meeting; and (4) shall have been submitted to the superintendent of insurance and shall have been approved by him in writing, provided that such plan shall not be approved by the superintendent unless at the time of such approval the corporation, after deducting the aggregate sum appropriated by such plan for the acquisition of all of its capital stock, shall be possessed of assets sufficient to maintain its deposit theretofore made with the superintendent and not less than the entire liabilities of the corporation, including the net values of its outstanding contracts computed according to the standard adopted by the corporation under section eighty-four of this chapter, and also all funds, contingent reserves and surplus save so much of the latter as shall have been appropriated under such plan.” (Former Insurance Law, § 95, as amd. by L. 1911, ch. 150, § 2.)
“ All acts or parts of acts inconsistent with this act are hereby repealed.” (L. 1911, ch. 150, § 3.)
Section 16 of that law as it then existed provided as follows: “ § 16. Investment of capital and surplus. * * * but no such funds shall be invested in or loaned on its own stock or the stock of any other insurance corporation carrying on the same kind of insurance business, provided that, if a stock life insur *1012 anee corporation shall determine to become a mutual life insurance corporation, it may, in carrying out any plan to that, end under the provisions of section ninety-five of this chapter, acquire any shares of its own stock by gift, bequest or purchase.”
This company was incorporated as a stock insurance company in 1912. Under the legal principles previously stated the right to mutualize the company existed by law. The right was accorded by section 95 of the law. It is elementary in any consideration of the constitutionality of a statute that the implementing statutes of a constitutional grant of power have the Constitution’s language as their framework or guide, whether expressed or not. “ The legislature has the reserved power to so amend the law under which a charter has been taken out as to carry with it a corresponding amendment of the charter itself, either directly, or by authorzing the corporation to make the change. ’ ’ (Lord v. Equitable Life Assur. Soc., 194 N. Y. 212, 227.)
Mutualization as an organic structural change was possible under the law as it stood when the Farmers and Traders was incorporated. It has not been changed in any way by any of. the amendments since 1911. The same safeguards that existed in 1911 exist in 1959. The same steps must be taken as in 1911. This court agrees that no act of the Legislature can take the private property of another without his consent and give it to another. (New York & Oswego Midland R. R. Co. v. Van Horn, 57 N. Y. 473.)
The case just cited is authority actually for the proposition that a contract previously invalid cannot be subsequently validated by the Legislature to the detriment of the individual. The converse is, therefore, true, viz.: that a valid contract containing implicitly the reservation to alter, change or repeal, may be changed licitly later. It follows, therefore, that the charter granted by the State of New York to the Farmers and Traders Life Insurance Company could be altered or modified by changes in the statute.
Section 70 and section 95 of the Insurance Law as it existed in 1912 must be read together. Section 70 does not impose rigidity upon charters granted under it. The whole act must be read together. When so read it is clear that even though established as a stock company the insurance company could mutualize. “ Acts which do more than regulate and control the internal management of a corporation, so far as it has relation to the public and concerns the policy of the State, are within the power to alter and repeal, even though the exercise of the power adds to the burden of the stockholder by increasing his liability, or diminishes the value of his stock, or changes the *1013 name, offices or proportion in management and control of the corporation.” (Hinckley v. Schwarzschild & Sulzberger Co., 107 App. Div. 470, 478.)
Again the same principle is restated in McNulty v. W. & J. Sloane (184 Misc. 835) where the court stated: “Our courts have held generally that the 1 reserved power ’ extends not only to the contract between the corporation and the State but to the contract between the corporation and the stockholders or between the stockholders inter sese. ‘ Accordingly to the majority view, all the elements of the contract between the shareholders with reference to their interest in the corporation and to its internal management may be altered by amendment to the charter, as being within the conditions upon which the State grants the privilege of corporate existence. ’ ”
Section 16 of the 1911 Insurance Law (supra) provided for the acquisition of stock of an insurance company upon mutualization. There is nothing abhorrent in such a provision. Subsequently the law was amended to provide more in detail how the stock was to be handled pending final mutualization. The general prohibition in the first part of the section was limited by the proviso. Evidently the Legislature recognized the existence of a potential problem and tried to meet it. At its worst it was a provision relating to the internal management of the corporation and, therefore, particluarly subject to legislative alteration. By no stretch of the imagination did it constitute an impairment of any contract between the State and the corporation or its stockholders.
A further pertinent fact should be noted. The stock of the corporation was increased 50% on October 19,1922. But section 16 of the Insurance Law had been amended by chapter 301 of the Laws of 1917. The substance of the amendment is incorporated almost in its verbal integrity in subdivision 3 of the present section 199 aforesaid. It is well-settled law that “ Statutes in existence when the stock is issued * * * are,
however, a part of the contract, and if such statutes authorize a change, then any seemingly absolute statement of such rights in other parts of the contract necessarily is to be read as subject to the changes so authorized, and such rights cannot properly be described as ‘ vested ’ in any sense which implies that they are not subject to such changes.” (Zobel v. American Locomotive Co., 182 Misc. 323, 326.)
What part, if any, of the shares held by the plaintiffs herein constituted part of the original issue and what portion were of the new issue, does not appear. But from the observations previously made, the additional issue would certainly be subject *1014 to all the provisions of sections 16 and 95 of the Insurance Law then in existence. It is not necessary to consider the argument that the law in effect when purchased controls. Sufficient it is to determine that the law in effect at time of issuance controls, containing as it did the seeds of mutualization.
This court, accordingly, declares that the defendants were within their rights in proceeding to mutualize the Farmers and Traders Life Insurance Company and that section 199 of the Insurance Law of this State, authorizing a plan of mutualization did not and does not violate that portion of section 10 of article I of the Constitution of the United States which provides “ No State shall * * * pass any * * * Law impairing the Obligations of Contracts ”.
The second cause of action is based upon an alleged violation of the Fourteenth Amendment of the Constitution of the United States. The complaint alleges, of course, a taking of plaintiff’s property without due process of law. That taking must be established by clear and convincing proof. “ 1 To justify the court, however, in declaring a statute invalid, the conflict between the act and the Constitution must be clear and certain. Every presumption favors the validity of the statute. If there is a reasonable doubt, the act should be upheld.’” (Fearon v. Treanor, 272 N. Y. 268, 274; Gardner v. Ginther, 232 App. Div. 296, 298, affd. 257 N. Y. 578.)
What is the property, if any, of which the plaintiffs have been deprived? Their shares entitle then to dividends, the right to vote at annual and special elections, and to an aliquot distribution of the net assets of the corporation upon dissolution. Section 199 aforesaid does not deprive them of any of those rights. In fact the plaintiffs have been most diligent in exercising some of them. The very “ right ” to be a stockholder was conditioned by former section 95 aforesaid. How can they be deprived of something, which they had and have, viz., the right to be mutualized? No stockholder in an insurance company is under any illusion. He knows or should know that his stock may be mutualized by the very law which gave the insurance company being. The enactment of amendments to the statute did not impair any contract with the corporate entity or the stockholders. (Zobel v. American Locomotive Co., supra.)
The prototype of section 199 was in existence in 1912 in sections 16 and 95 of the then Insurance Law. Insurance business is a different type of business than the ordinary. The two types of general insurance business were and are well known. 1‘ The power reserved to the state to alter corporation laws and charters is specific and ample warrant for this legislation.” *1015 (§ 199.) (Garzo v. Maid Of Mist Steamboat Co., 303 N. Y. 516, 523; Close v. Glenwood Cemetery, 107 U. S. 466.)
To argue that the enactment of section 199 (supra) was an interference with the “vested rights ” of the plaintiffs is a complete begging of the question. All the rights' of the plaintiffs to vote are in a sense vested. So too is the right to dividends and to distribution of net assets upon dissolution. But attached to the share of stock in an insurance company in this State is the “vested right” to be mutualized. Under varying conditions, it may not be as pleasant a right to exercise as that of receiving dividends, but it is, nevertheless, a right of the stockholder. (Davison v. Parke, Austin & Lipscomb, Inc., 285 N. Y. 500.)
A somewhat similar situation was presented in Jay Ronald Co. v. Marshall Mtge, Corp. (291 N. Y. 227). There the capital stock was reduced from $300,000 to $100,000; the sum realized was allocated to surplus. The plaintiff maintained his vested rights had been interfered with and that the $200,000 should be repaid to the stockholders. The Appellate Division agreed but the Court of Appeals held otherwise.
Again this court reiterates that no stockholder is compelled to sell his stock under the provisions of section 199 of the Insurance Law. That is entirely in the discretion of the owner of the stock. There being no compulsory taking, there is no confiscation. This court, therefore, declares that the defendants were within their rights in carrying through the proposed mutualization and that section 199 of the Insurance Law of this State is not in violation of the Fourteenth Amendment to the Constitution of the United States.
The third cause of action claims that section 199 aforesaid violates section 6 of article I of the State Constitution which provides “ No person shall be deprived of * * * property without due process of law.” At the time of the incorporation of the Farmers and Traders Life Insurance Company, in addition to the article of the Constitution previously mentioned, there was a provision (§ 320, now § 5) of the General Corporation Law applicable to all corporations, which reads as follows: “ 5. Alteration and repeal of charter. The charter of every corporation shall be subject to alteration, suspension and repeal, in the discretion of the legislature.” Any proprietary interest in a corporation carries both the constitutional and legislative warning with it. From the principles previously discussed, it follows that there was no taking of the plaintiffs’ property without due process of law. The different treatment accorded to insurance companies has a valid and reasonable basis in prac *1016 tice. (German Alliance Ins. Co. v. Lewis, 233 U. S. 389; Matter of People [International Workers Order], 199 Misc 941, affd. 280 App. Div. 517, affd. 305 N. Y. 258.)
This court declares, therefore that section 199 of the Insurance Law is valid under section 6 of article I of the State Constitution and that the contention of the plaintiffs that it is invalid because it allegedly violates that section is without merit.
The claim that the acts of the officers. and directors were ultra vires is based upon the assumption that section 199, and especially subdivision 3 thereof, is unconstitutional. Having heretofore decided contrary to the assumption, the claim of ultra vires must fall. The court declares that the acts of the directors and officers in proceeding to mutualize were a proper exercise of power within the law and were not ultra vires.
The fifth, sixth and seventh causes of action are directed against the right of the mutualization trustees to vote the shares of stock. Basically the three causes of action are directed against the constitutionality of section 199 aforesaid. This court has already dealt with the alleged violations of section 10 of article I of the Federal Constitution and the Fourteenth Amendment thereto and with the alleged violations of section 6 of article I of the State Constitution and has held that there is and was no constitutional violation. The untenableness of the plaintiffs’ position can be noted by carrying out their argument to its logical conclusion. If the stock is company property immediately upon surrender, and before mutualization, the anomalous situation would result that the dissenting stockholders would control the company. Subdivision 3 was and is a reasonable attempt to avoid the anomaly and to provide for the internal management of the corporation. As such it is a proper exercise of the constitutionally reserved power. The stock does not becom'e treasury stock until the plan is completed. The assignment to the trustees is perfectly proper and legal. Of course, their voting the stock and carrying out of the plan of mutualization is valid exercise of the power conferred under section 199 and the four-times approved plan of mutualization.
There are many other specific declarations requested but they are all dependent upon the determination of the constitutionality of section 199 aforesaid. Having found and declared the section valid and constitutional, it follows and this court declares that the acts done by the officers, directors and mutualization trustees in carrying out a plan, found to meet the requirements of the law by the Superintendent of Insurance, are proper and valid and no injunction against acts done thereunder should issue out of this court. It should be noted here *1017 that the parties to this action have stressed the fact that the only issue submitted herein is the constitutionality of section 199 of the Insurance Law as it applies to and affects the mutualization of the Farmers and Traders Insurance Company. Having-found as indicated, the declarations as to specific items become unnecessary other than to deny them.
This memorandum is in detail and is filed in lieu of findings under section 440 of the Civil Practice Act. Prepare decree accordingly.