OPINION OF THE COURT
John J. Callahan, J.
Plaintiffs seek a judgment declaring the excise tax on occupancy (Local Laws, 1976, No. 5 of the City of Buffalo) unconstitutional and enjoining the city from collecting said tax or imposing penalties for nonpayment thereof. The present action was commenced by service of an order to show cause, together with a summons and complaint, on or about the 21st day of January, 1977. Upon the return of the show cause order, Justice Cook of this court denied plaintiffs’ request for a preliminary injunction. Issue has not yet been joined and the matter comes before us upon the defendant’s motion for dismissal pursuant to CPLR 3211.
The nature of the lawsuit and the pleadings presented to the court indicated that the motion should be treated as one for summary judgment. (Plaza Mgt. Co. v City Rental Agency, 31 AD2d 347.) We gave notice of our intention, pursuant to CPLR 3211 (subd [c]), to each party with leave to submit whatever material they deemed relevant.
*439 Plaintiffs allege 11 causes of action. The gravamen of these is that the occupancy tax, as it has come to be known, is violative of the Constitutions of New York and the United States and the enactments of the New York Legislature. The plaintiffs allege to be residents or property owners of the City of Buffalo subject to the provisions of the tax. The defendant is the chief executive officer of the municipal corporation and this action is brought against him in that capacity.
It is true that the allegations of residency are not in strict compliance with the requirements of CPLR 3013. The defect is not in and of itself fatal, however. The liberal interpretation which we are required to apply to pleadings requires that the defect be overlooked, at least at this juncture of the lawsuit. (CPLR 3026.)
We will assume for the purposes of this motion, that all factual allegations are true. (Laura Distr. Corp. v Koch, 35 AD2d 731.)
Plaintiffs’ initial allegation relates to what they perceive as a prohibition against imposition of an occupancy tax by cities having a population of less than 1,000,000 persons. This cause of action is based upon section 1201 of the Tax Law which provides: "Notwithstanding any other provisions of law to the contrary, but subject to the applicable limitations and exemptions in part II of this article, any city in this state having a population of one million or more, acting through its local legislative body, is hereby authorized and empowered to adopt and amend local laws imposing in any such city any or all of the types of taxes set forth in the following subdivisions of this section, such taxes to be administered and collected by the fiscal officers of such city in the manner provided for in subpart A of part III of this article: (a) Taxes on the privilege of doing any business, engaging in any trade, calling, occupation or profession; owning, holding or occupying any property”.
Section 1203 of the same chapter, entitled "[T]axes Administered by cities under one million”, provides: "a. Notwithstanding any other provision of law to the contrary, any city in this state with a population of less than one million is hereby authorized and empowered, subject to the limitations and exemptions in part II of this article, to adopt and amend local laws, ordinances or resolutions imposing in such city any of the taxes authorized under subdivisions (c), (d) and (e) of section twelve hundred one, at the rates provided for therein, *440 such taxes to be administered and collected in the manner provided for in subpart A of part III of this article.”
It is evident that the power to impose an occupancy tax has not been specifically enumerated as one of those available to cities of 1,000,000 or more which has been given under this chapter to cities of under 1,000,000. Plaintiffs urge that since such power is not enumerated, it is forbidden. They base this conclusion on the introductory phrase of both sections "[N]otwithstanding any other provision of law to the contrary”. (Tax Law, §§ 1201, 1203.) The reasoning is that this phrase is restrictive; that it allows only certain actions, as set forth.
The meaning of the phrase is permissive, however, in that it allows actions otherwise prohibited.
Plaintiffs’ argument is negated further by the fact that following the introductory phrase as quoted, each section goes on to say "but subject to the applicable limitations and exemptions in part II of this article.” (Tax Law, §§ 1201, 1203.) Part II includes the following language: "§ 1222. Taxes to be in addition to others — Except as expressly otherwise provided in this article, any tax imposed under the authority of this article shall be in addition to any and all other taxes authorized or imposed under any other provision of law. This article shall not be construed as limiting the power of any city, county or school district to impose any other tax which it is authorized to impose under any other provision of law.” The section speaks for itself.
The defendant, through the municipal legislative body, enacted the occupancy tax pursuant to the authority of section 110 of the Public Housing Law. That section provides in relevant part that "a city shall levy one or more of the following taxes: * * * (c) An excise tax on occupancy.” Plaintiffs have not questioned the legality or constitutionality of that law. They contend that this section has been superseded by article 29 of the Tax Law, however, and that the authority granted therein is limited to cities of 1,000,000 or more. There is no authority for such contention. Article 29 of the Tax Law permits cities to impose certain taxes. It provides that certain taxes may be imposed by certain sized cities and others by smaller cities. It is not intended, as we construe it, to be all inclusive with regard to the taxing power of cities. Section 1222 of the Tax Law is an indication that such a conclusion is correct. Section 110 of the Public Housing Law is not limited to cities with a population of over 1,000,000 persons. To read *441 such a restriction into the statute would be contrary to section 220 of the Public Housing Law, which requires a liberal construction to effectuate the purposes thereof. The authors of section 220 may have anticipated plaintiffs’ argument for they provide: "the enumeration of specific powers in this chapter shall not operate to restrict the meaning of any general grant of power contained in this chapter”. Section 110 of the Public Housing Law is a general grant of power to "cities” subject only to the limitation of section 94 of that chapter. It has not been argued that the tax enacted is without the strictures of section 94. Since there is no differentiation as to size, we may presume that it is applicable to all cities.
The plaintiffs’ first cause of action, relying for success on a misinterpretation of the basic concepts of legal logic, is therefore without basis.
Plaintiffs’ second cause of action alleges that they are unable to determine their liabilities under the ordinance for various reasons, principally asserting vagueness as to definitions, duties and penalties. The conclusion of plaintiffs is that the ordinance is therefore unconstitutional.
In construing an ordinance, the court must take the words employed in their ordinary meaning unless it is plainly necessary to enlarge or modify that meaning in order to effectuate the legislative intent. (Fifth Ave. Coach Co. v City of New York, 194 NY 19, affd 221 US 467.) "Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements.” (People v Grogan, 260 NY 138, 145.) This basic tenet was quoted with approval by the courts in invalidating an ordinance requiring "customary street attire” (People v O’Gorman, 274 NY 284), in upholding part of the Election Law (People v Lang, 36 NY2d 366) and very recently in upholding a section of the Penal Law (People v Esteves, 85 Misc 2d 217).
The test is whether the terms of a statute are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application”. (Trio Distr. Corp. v City of Albany, 2 NY2d 690.) If so, then the statute is violative of due process.
The occupancy tax defines those who are to be taxed, when they are to be taxed, how the tax is to be collected, and the *442 penalties to be imposed for nonpayment. The language in our opinion is certainly more definite than that struck down in People v Firth (3 NY2d 472) or People v Berck (32 NY2d 567, cert den 414 US 1093), where the court found it necessary to go beyond the face of the statute to determine the prohibited activity.
Application of this test to the ordinance in question leads to the conclusion that it is not constitutionally vague. The ordinance sets forth with clarity the obligations and liabilities of persons defined therein.
The fact that some definitions are expanded upon in the charter of the City of Buffalo and other statutes does not change our opinion. (Fifth Ave. Coach Co. v City of New York, 194 NY 19, supra.)
Plaintiffs’ third cause of action alleges that paragraph "9” of the ordinance, as it provides for liability for failure to pay the tax, constitutes a taking of property without just compensation in violation of the requirements of due process. We agree with plaintiffs that the police power is not without limits. It is, however, as we noted above extremely broad in this area. Plaintiffs are correct in asserting the rule of Lawton v Steele (152 US 133), quoted with approval in Goldblatt v Hempstead (369 US 590) to the effect that State interference with private rights are dependent upon the public interest requiring such interference and the reasonable necessity of the means employed, and are not unduly oppressive. Assuming that the rights of lessors in the City of Buffalo have been interfered with, there has been no violation of due process. The legislative body, acting within their province, have determined that the public interest requires the instant legislation. The means to collect the tax are reasonable in that only a lessor is able to determine the number of tenants occupying a particular property or properties. For the city to make inquiry of each property in the city would no doubt entail an expense negating the amount of revenue to be raised.
We find no interference with property rights, however. The ordinance, although it speaks of the tax and penalty as a lien, requires the application of fundamental due process in the use of the courts prior to the imposition of a lien. The lessor’s role in relation to his tenant’s is as an agent of the city. The tax is upon the occupant and not the property itself.
Plaintiffs’ fourth cause of action alleges that provisions of this ordinance require interference with the landlord and *443 tenant contract and are, therefore, violative of section 10 of article I of the United States Constitution. It provides in part that, "[N]o State shall * * * pass any * * * Law impairing the Obligations of Contracts”. This caveat is violated when a statute imposes new conditions or adds new duties of the contracting parties. (Carder Realty Corp. v State of New York, 260 App Div 459, affd 285 NY 803.) Where legislation does not act on the contract itself but merely on the property which is the subject thereof, it is valid. (Opgal Inc. v Burns, 20 Misc 2d 803, affd 10 AD2d 977, affd 9 NY2d 659.) A radical alteration of a corporate business which results from legislative enactment will not render such enactment invalid. (Sylvander v Taber, 19 Misc 2d 1005, affd 9 AD2d 1019, affd 8 NY2d 835, remittitur amd 8 NY2d 1038.)
The basic obligations under a lease are twofold: the landlord is required to furnish a habitable dwelling or suitable commercial space, and the tenant is required to make payments therefor. The ordinance challenged requires the owner of property to collect the tax and pay it to the city. On its face this appears to add additional obligations to each of the parties to the lease. These duties do not, however, impair the obligation of either party to the lease. The obligations imposed are outside the landlord and tenant contract. They are obligations which do not interfere with the basic duties under that contract. The tenant is not required to increase rental payments, nor is the landlord required to provide anything other than what he contracted to provide. The contract between the parties remains inviolate. Therefore, plaintiffs’ fourth cause of action is dismissed.
Plaintiffs’ fifth and sixth causes of action allege that the ordinance is violative of the equal protection clauses of the New York and United States Constitutions since it exempts certain properties from the tax imposed and discriminates on the basis of family membership. Specifically, plaintiffs complain of the definition of premises as excluding "premises * * * which are located in, upon, above or under any public street, highway or public place”. (§ 548[l][b]) and the definition of family found in section 548(2).
Application of the traditional test for denial of equal protection requires initially a determination of the basis of the classification involved and the governmental objective purportedly advanced by the classification. (Matter of Abrams v Bronstein, 33 NY2d 488.) The exemption of premises quoted *444 above is identical to that found in section 110 of the Public Housing Law. The question then is whether the State Legislature in enacting that statute in 1939 had a rational basis for excluding certain property from the taxation imposed. The court has been unable to find any pronouncements or writings which indicate the thought process of the Legislature at the time of enactment This does not mean, of course, that such a basis was nonexistent. Where a legislative judgment has been questioned, the court must restrict its inquiry to "whether any state of facts either known or which could reasonably be assumed affords support for it.” (United States v Carolene Prods. Co., 304 US 144, 154.) Even if the classification be fairly debatable, it must be sustained (Neale v Hayduk, 35 NY2d 182; Matter of Presnell v Leslie, 3 NY2d 384), provided that it not be palpably arbitrary. (New York ex rel. Bryant v Zimmerman, 278 US 63.) There has been no proof that the classification complained of is of such nature. We note also that the fact that this classification has existed unchallenged for many years is some evidence of its reasonableness. (Shapiro v City of New York, 32 NY2d 96.) The constitutional requirements of equal protection do not mean that all persons must be treated exactly alike. (Matter of Buttonow, 23 NY2d 385.) They mean that all persons in a particular class must be treated equally. (People v Acme Markets, 37 NY2d 326.) The test is whether the difference in treatment is an invidious discrimination. (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356.)
Application of this test and recognition of the broad powers of the Legislature in this area, as recently reiterated in Matter of Catapano Co. v New York City Fin. Admin. (40 NY2d 1074), lead to the conclusion that the equal protection guarantees have not been violated.
Plaintiffs have urged that application of a middle ground, or balancing, test to the ordinance’s classification of family will find it to be violative of the equal protection clauses. This test, as applied in New Jersey Welfare Rights Organization v Cahill (411 US 619), involves weighing the constitutional and societal interest adversely affected and the recognized invidiousness of the basis upon which the particular interest is drawn. Both the New Jersey case, and United States Dept. of Agric. v Moreno (413 US 528), also relied upon by plaintiffs, specifically excluded certain classes of persons from receiving benefits conferred directly upon other members of society. The *445 situation before us is entirely different. Assuming that the provision of public housing is beneficial to the society as a whole, no one in the City of Buffalo will be deprived of that benefit by the imposition of this tax. Removing the revenues derived from the tax could have the effect of depriving all residents of the benefits to be derived, particularly those who must reside in such housing. To suggest that those who must live in public housing should not pay for that housing, it could be argued, would violate the right of those who would pay for the housing.
Plaintiffs’ reliance upon Alvey v Downstate Med. Center of State of N. Y. (39 NY2d 326) as evidence of the application of a middle ground test to determine whether equal protection guidelines have been violated is misplaced. The court did indicate that this test would be applied where warranted, but went on to apply the test of strict scrutiny to find that the plaintiff had been discriminated against. The test requires inquiry to determine whether a compelling State interest is necessarily being promoted by the utilization of the classification complained of and whether less onerous alternatives exist. (Alvey v Downstate Med. Center of State of N. Y, supra.) This test is not required to be applied to each and every classification. (See Matter of Malpici-Orsini, 36 NY2d 568 and Montgomery v Daniels, 38 NY2d 41.) Application of the strict scrutiny test to this ordinance would require affirmance of the legislative action. Since plaintiffs have conceded, and we have found, a substantial State interest in raising money, the Legislative decision as to classification, if reasonably related to the end of establishing a rational line of distinction, will stand. (Montgomery v Daniels, supra, p 64; see Matter of Catapano Co. v New York City Fin. Admin., 40 NY2d 1074, supra.) We would not reach the question of whether less objectionable alternatives exist since there has been no demonstration that plaintiffs have personally suffered any legal harm. (Alvey v Downstate Med. Center of State of N. Y, supra.) Plaintiffs allege that the classification of family will lead to double taxation and is therefore discriminatory. We agree that if double taxation had been imposed, it would have been improper. There has been no proof that such double taxation has been imposed, however.
Plaintiffs’ seventh cause of action alleges violation of the equal protection and due process provisions of the State and Federal Constitutions. We see no reason to re-examine the *446 equal protection provisions. The ordinance challenged here has for its sole purpose the raising of revenue. Plaintiffs cannot, therefore, avail themselves of the due process clause to condemn it. (Ampco Print-Advertisers’ Offset Corp. v City of New York, 14 NY2d 11, 24, app dsmd 379 US 5; Shapiro v City of New York, 32 NY2d 96, supra.) Since the State Legislature authorized the imposition of this tax, there has been no denial of due process. (Matter of Catapano Co. v New York City Fin. Admin., 40 NY2d 1074, supra.)
A further allegation of the plaintiffs is that the tax violates section 10 of article VIII of the New York State Constitution, which limits the amount a city may raise by taxation of real estate. A tax of this nature is not one on real estate and does not come under the prohibition. (Ampco Print.-Advertisers’ Offset Corp. v City of New York, supra.)
If this tax were considered to be one on real estate, it is different from the levy found unconstitutional in Hurd v City of Buffalo (41 AD2d 402, affd 34 NY2d 628.) The Appellate Division in that case differentiated between one time funding of obligations while means of obtaining additional revenue were found and a continuing evasion of the constitutional tax limit. One time funding has previously been held to be permissible. (Cherey v City of Long Beach, 282 NY 382; Bugeja v City of New York, 24 AD2d 151, affd 17 NY2d 606.) We need only note that the ordinance before us expires on July 1, 1977.
We reach a similar conclusion with regard to plaintiffs’ ninth cause of action relating to the Bill of Rights of the United States Constitution. The ordinance as constituted requires an owner of real property with rental units to do no more than collect the tax. Since the tax is applied on the basis of the value of the real property, and does not differentiate between different types of occupants, no inquiry is necessary as to the status of particular occupants.
The cotiiplaint alleges that the ordinance violates the United States Housing Act (US Code, tit 42, § 1437), which limits the cost of shelter in low income housing. That section provides in pertinent part that "[T]he rental for any dwelling units shall not exceed one-fourth of the family’s income”. (US Code, tit 42, § 1437a, subd [1].) There is nothing in the section, or other sections of chapter 8 of title 42, which exempts occupants of public housing from taxation by local governments. As we indicated with regard to private rental agreements, this ordinance does not interfere with or impair the *447 rental agreement. It is an obligation which exists outside of the landlord and tenant relationship. It is a tax, not a rental payment. Therefore, we find no validity to plaintiffs’ argument.
Plaintiffs’ final cause of action alleges an improper delegation of authority to the treasurer of the city since no specific standards are provided to guide the actions of that officer.
No improper delegation of legislative powers occurs when the legislation in question describes the job to be done, who is to do it and that person’s authority. (9 NY Jur, Constitutional Law, § 135.) The delegation of broad power by a legislative body to a public official or administrative bodies has generally been viewed as proper. (Matter of Old Republic Life Ins. Co. v Wikler, 9 NY2d 524; Bergerman v Lindsay, 25 NY2d 405; Matter of Rosenthal v Hartnett, 36 NY2d 269.) It is this court’s opinion that it is also a necessary one in view of the ever increasing responsibilities and obligations of governments at all levels.
The power given to the treasurer by this ordinance is not so broad or ambiguous as to be violative of the power of delegation.
Since plaintiffs have urged economic and humanistic reasons for lifting the burden of this tax, it is appropriate that we address those as well as the legal arguments.
Taxation by its very nature is oppressive in the basic sense of that word. Its burden becomes greater as it is applied to those on the lower levels of the economic stata. Taxation is also an evil necessary to the functioning of governmental units. The fact that it is more burdensome to some than to others will not invalidate a tax which the Legislature has determined necessary, nor will the fact that the tax imposed is a regressive one. This is a determination to be made by social science commentators and legislators, rather than judicial tribunals. Our inquiry is limited to whether a legislative enactment is in compliance with the requirements of the State and Federal Constitutions. Whether a certain tax is the best means of raising needed revenue or whether a Legislature should have enacted a different taxing method are without the purview of that inquiry. Personal feelings as to the nature of the tax questioned and sympathy for those whose means make it difficult to comply with a particular law are irrelevant and cannot be considered in deciding the question before us.
It is axiomatic that legislative enactments are pre *448 sumed to be constitutional and that those who seek to hold them otherwise must sustain a great burden of proof. (Matter of Jacobs, 98 NY 98.) This burden goes to proof beyond a reasonable doubt. (Nettleton Co. v Diamond, 27 NY2d 182.) This is especially true when the statute questioned involves , the taxing power (Matter of Grace v New York State Tax Comm., 37 NY2d 193), for Legislatures possess their greatest freedom in that area. (Shapiro v City of New York, 32 NY2d 96, reh den 414 US 1087, supra.)
The presumption of constitutionality applies to ordinances as well as statutes and our inquiry here is limited. (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11.) It is the opinion of this court, for the reasons stated hereinbefore that the plaintiffs have not met their burden of proof.
Our system of government gives Legislatures the power to decide the wisdom of legislation. Although courts at one time substituted their value judgments for that of legislative bodies in reviewing legislation, such substitution is now forbidden. Legislative bodies have broad discretion in dealing with economic problems and the decision as to the need and appropriateness of particular legislation is strictly within the province of those who have been elected to pass laws. (Ferguson v Skrupa, 372 US 726.)
Accordingly, we find the challenged ordinance to be constitutional and judgment is directed for the defendant.